**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 19 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

MICHAEL ANDREWS,

      Plaintiff-Appellant,

v.

TOWN OF SKIATOOK,
OKLAHOMA,

      Defendant-Appellee.

No. 96-5075

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 95-C-0057-M)**

Eric B. Bolusky, Huffman, Thomas & Bolusky, Tulsa, Oklahoma, for Plaintiff-Appellant.

Jay C. Baker, Tulsa, Oklahoma, for Defendant-Appellee.

Before **ANDERSON, BALDOCK,** and **EBEL**, Circuit Judges.

**EBEL**, Circuit Judge.

Michael Andrews was an emergency medical technician (EMT) employed by the ambulance service of the Town of Skiatook, Oklahoma. Andrews worked four twelve-hour shifts per week, for which he was compensated. He was on call

during four twelve-hour shifts per week, for which he was not compensated.[1] Andrews brought an action against the town, claiming that the hours he was on call were compensable under the Fair Labor Standards Act because of the restrictions placed on his personal activities during on-call time.

By the parties' consent the action was tried to a magistrate judge who rejected Andrews' claim, finding that the time he spent on call was "predominantly for his personal benefit" and not for the benefit of his employer.[2] Andrews appeals.

The magistrate judge expressed his decision in well-reasoned Findings of Fact and Conclusions of Law with which we substantially agree.[3] We thus attach the Findings of Fact and Conclusions of Law as an Appendix and AFFIRM for substantially the reasons stated therein.

---

[1]Every third week, Andrews was required to work five on-call shifts.

[2]The parties consented to final disposition by the magistrate judge pursuant to 28 U.S.C. § 636(c). Therefore, we have jurisdiction to review the magistrate judge's decision without the intervening consideration of the district court. Grimsley v. MacKay, 93 F.3d 676, 678 (10th Cir. 1996).

[3]We review a decision rendered by a magistrate judge pursuant to 28 U.S.C. § 636(c) using the same standards that we apply to a decision of a district court. Grimsley, 93 F.3d at 679. Thus, we have reviewed the issues of law de novo and the findings of fact under a clearly erroneous standard. Id.

APPENDIX

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

MICHAEL ANDREWS,                       )
                                       )
        PLAINTIFF,                     )
                                       )        CASE NO. 95-C-0057-M
vs.                                    )
                                       )
TOWN OF SKIATOOK, OKLAHOMA,            )
                                       )
        DEFENDANT.                     )

FINDINGS OF FACT/CONCLUSIONS OF LAW

The parties consented to trial before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This Court conducted a non-jury trial on January 22, 1996 and January 31, 1996. Based upon the evidence presented at trial, the argument of counsel and the proposed Findings of Fact and Conclusions of Law and supporting briefs submitted by both parties, the Court hereby issues its FINDINGS OF FACT AND CONCLUSIONS OF LAW.

# FINDINGS OF FACT

1.      Plaintiff, Michael Andrews, is a resident of the town of Skiatook, State of Oklahoma, and was employed by the Town of Skiatook as an Emergency Medical Technician (EMT) from February 28, 1993 to January 6, 1995.

2.      Defendant, Town of Skiatook, is a political subdivision of the State of Oklahoma, existing under the laws of the State of Oklahoma, and was engaged in the business of managing, maintaining and operating an emergency ambulance service at all times relevant to this litigation.

3.      During his employment as an EMT with the Town of Skiatook, Plaintiff was required to work four regular twelve-hour shifts per week and four twelve-hour on-call shifts per week which immediately followed his regular twelve-hour shift.  Every third week Plaintiff was required to work one additional twelve-hour on-call shift.  EMTs were permitted to trade their on-call shifts with another EMT and would then be expected to pay back the other EMT by covering an on-call shift for him/her.

4.      The Town of Skiatook operated two emergency ambulances.  One ambulance was staffed by two EMTs who remained at the ambulance station.  The second ambulance was staffed by two "on-call EMTs" who were required to respond to calls in the second ambulance when an emergency call was received

- 4 -

while the first ambulance was on another run. A call serviced by the second ambulance staffed by on-call EMTs is called a "second run."

5. While on-call, Plaintiff was required to monitor a pager which could be utilized to summon him for a second run. In addition to summoning the on-call personnel, the pager would advise the on-call personnel when the first ambulance had gone on a run. On-call EMTs could also monitor a police radio, which would advise them when the first ambulance had completed its run and returned to the ambulance station. Thus, the on-call EMTs would be aware when the first ambulance was on a run and there was an increased likelihood they could be summoned to make a second run.

6. While on-call, the EMTs were required to remain clean and appropriately attired, although not required to report in uniform, to refrain from drinking alcohol, and to respond to an on-call page within a reasonable period of time.

7. Conflicting evidence was presented to the Court concerning the required response time for on-call EMTs to begin a second run. Plaintiff presented evidence that the Town of Skiatook required on-call EMTs to respond and be physically moving in the second ambulance within five minutes of receiving a page for a second run. Defendant presented evidence that there was no official policy that on-call EMTs respond and be rolling on a call within five

minutes of receiving the page. Rather, Defendant contended that on-call EMTs were only required to respond and be rolling in a reasonable time.

8. Defendant's Exhibit 12 sets forth Plaintiff's actual response time for the 76 second runs he made during his approximately two years of employment with Defendant. The response time is the number of minutes it took for Plaintiff to respond to the page and be rolling in the ambulance. Plaintiff averaged a response time of 4.84 minutes. Plaintiff took more than five minutes to respond to 28 of the calls, the longest being 13 minutes. Plaintiff's response times ranged from zero (0) minutes, which was explained by his presence at the ambulance station when the call was received, to a high of 13 minutes. Plaintiff was never disciplined for response times in excess of 5 minutes.

Based upon the evidence presented and the credibility determinations made by the Court, the Court finds that there was not an official policy of Defendant requiring on-call EMTs to respond and be rolling on a second run within five minutes of receiving the page. However, the Court finds that there was an established practice of Defendant which required on-call EMTs to respond to a page for a second run promptly and that this practice resulted in a practical requirement that on-call EMTs respond to a page for a second run and be rolling within five to ten minutes of receiving a page.

9.    Plaintiff was not compensated for the time spent on-call unless he was called back to make a second run, in which case, Plaintiff was compensated for a minimum of two hours at time and one/half pay.  Of the 76 second runs Plaintiff made, none lasted more than two hours.

10.    In 1993, the Town of Skiatook ambulance service made a total of 1,071 runs, 115 of which were second runs.  Plaintiff made 28 second runs.

11.    In 1994, the Town of Skiatook ambulance service made a total of 1,171 runs of which 140 were second runs.  Plaintiff made 48 second runs.

12.    Plaintiff worked ten months in 1993.  At four on-call shifts per week and one extra on-call shift every three weeks, Plaintiff would have worked a total of 173 on-call shifts in 1993.  Considering that Plaintiff went on 28 second runs in 1993, the Court calculates that Plaintiff was actually called back to service during 16.18% of his on-call shifts in 1993.

13.    Plaintiff worked a full twelve months in 1994.  At four on-call shifts per week and one extra on-call shift every three weeks, Plaintiff would have worked a total of 209 on-call shifts.  Considering that Plaintiff went on 48 second runs in 1994, the Court calculates that Plaintiff was called back to service during 22.96% of his on-call shifts in 1994.

14.    Considering the total number of all second runs for the Skiatook ambulance service in relation to the total number of ambulance calls for the

Skiatook ambulance service, based on Defendant's Exhibit 12, the Court concludes that in 1993, second runs were required in 10.7% of the total number of calls, while in 1994, second runs were required in 11.9% of the total number of calls.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and 28 U.S.C. § 1337. Defendant Town of Skiatook is a public agency and employer within the meaning of the Fair Labor Standards Act, is located within the jurisdiction of this Court, and is subject to the provisions of the Fair Labor Standards Act.

The test to determine whether an employee's on-call time constitutes working time is whether the time is spent predominantly for the employer's benefit or for the employee's. *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S. Ct. 165, 89 L. Ed. 118 (1944). That test requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances, *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944).

The 10th Circuit has consistently adhered to the above principles in addressing the issue of the compensability of on-call time. *See generally Gilligan*

*v. City of Emporia, Kansas,* 986 F.2d 410 (10th Cir. 1993)(no on-call compensation for water and sewer employees required to wear pager, stay sober and report within 30 minutes); *Armitage v. City of Emporia, Kansas,* 982 F.2d 430 (10th Cir. 1992)(no on-call compensation for detectives required to wear pager, stay sober, report within 20 minutes where called less than 2 times per week); *Renfro v. City of Emporia, Kansas,* 948 F.2d 1529 (10th Cir. 1991)(on-call compensation awarded to firefighters required to report within 20 minutes where the number of call-backs could be as high as 13 per shift and averaged 3-5 per shift); *Boehm v. Kansas City Power & Light Company,* 868 F.2d 1182 (10th Cir. 1989)(no on-call compensation for power company linesmen who were required to be reachable by telephone and to accept call-outs 1/3 of the time called); *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653 (10th Cir. 1988)(no on-call compensation for van drivers required to report within 15-20 minutes).

In addition to the authorities set forth above, the Court has also considered the following regulations promulgated by the United States Dept. of Labor concerning the compensability of on-call time:

> An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call". An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call. 29 C.F.R. § 785.17.

Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work. 29 C.F.R. § 553.221(c).

Resolution of the matter involve[s] determining the degree to which the employee could engage in personal activity while being subject to being called. 29 C.F.R. § 553.221(b) [sic] [cite should be to <u>Renfro</u>, 948 F.2d at 1537, <u>quoting</u> <u>Norton</u>, 839 F.2d at 655].

Of the five 10th Circuit cases cited above, in four of the cases the court held that time spent on-call is not compensable. The sole 10th Circuit authority finding on-call time compensable is *Renfro, supra.* Plaintiff argues that his case is controlled by the decision in *Renfro*. This Court disagrees.

In *Renfro* the firefighters, although not required to remain on the premises while on-call, were required to report to the station within twenty minutes of being called back, were called back as many as 13 times in one shift, and averaged 3 to 5 callbacks per on-call shift. In *Renfro,* the 10th Circuit affirmed the district court which found:

> [T]he frequency with which Emporia firefighters are subject to call-backs readily distinguishes this case from cases which have held that on-call time is non-compensable. In many of those cases, the probability of an employee being called in, and thus, the probability of disruption of the employee's personal activities, was minimal.

*Renfro v. City of Emporia, Kansas,* 729 F. Supp. 747, 752 (D. Kan. 1990). The <u>infrequency</u> of callbacks in this case distinguishes it from *Renfro.*

- 10 -

Instead of being called back to work on average between 3 to 5 times per on-call shift, Plaintiff was only called back 16.18 % of the time during his on-call shifts in 1993 and 22.96 % of the time for his on-call shifts in 1994. Further, when all on-call second runs are calculated, any EMT on-call for Defendant was required to respond to a second run only 10.7 % of the time in 1993, and 11.9% of the time in 1994. This major difference in the number of times Plaintiff was called back as compared to the firefighters in *Renfro* clearly distinguishes the present case from *Renfro* and aligns it squarely with *Gilligan, Armitage, Boehm* and *Norton, supra*.

Plaintiff also relies on an opinion letter of the Wage/Hour Administrator of the Dept. of Labor, No. 1609, wherein the Wage/Hour Administrator opined as follows:

> On-call time of ambulance personnel who were required to either remain at an establishment while on call or be ready to respond from their home within three minutes was compensable time. The three-minute response requirement was too restrictive for employees to use on-call time effectively for their own purposes.

However, the opinion letter gives no more than this bare-boned factual statement focusing completely upon the 3 minute response time. As noted above, the Court finds that the required response time in this case ranged between 5 and 10 minutes with a low incidence of actually being called for a second run while on-call.

These facts render the conclusion reached in the opinion letter relied upon by Plaintiff inapplicable to the instant case.

The situation in this case is closer to *Spires v. Ben Hill County*, 745 F. Supp. 690 (M.D. Ga. 1990), than it is to either *Renfro* or the opinion letter. In *Spires* the court held that EMTs on-call who were required to respond to the station within ten minutes of receiving a call, in uniform or jumpsuit, clean and sober, and who also worked greater than 8 hours per 24 hour on-call period did not qualify for on-call compensation because the restrictions did not preclude them from effectively using their time for personal pursuits.

While the Court certainly acknowledges that Plaintiff's time on-call somewhat restricted his personal activities; the test is not whether there was some restriction on Plaintiff's personal activities. Rather the test is whether Plaintiff's on-call time was spent predominantly for the benefit of his employer. In *Bright v. Houston Northwest Medical Center Survivor, Inc.,* 934 F.2d 671 (5th Cir. 1991), the Court observed:

> As noted, we have described "the critical issue" in cases of this kind as being "whether the employee can use the [on-call] time effectively for his or her own purposes". This does not imply that the employee must have substantially the same flexibility or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject. [*citations omitted*] *Id*. at 677.

On the facts before this Court, it is clear that Plaintiff's on-call time was predominantly for his personal benefit. While on-call, Plaintiff was free to engage in any activity of his choosing as long as he remained clean, did not drink alcohol and could respond to the ambulance station within five to ten minutes. The five to ten minute requirement gave Plaintiff access to all of the small town of Skiatook. Further, the fact that Plaintiff was notified when the first ambulance had gone on a run enabled Plaintiff to prepare for the possibility of a second run and to structure his activities so his on-call time would be as least restrictive as possible. In this regard it is fair to conclude that Plaintiff felt only slight restrictions on his personal activities while the first ambulance was not out on a call. It was only when the first ambulance was out on a call that Plaintiff had any significant chance of having to respond to a second run call and, based upon actual experience, Plaintiff knew that the percentage of time when a second run call would be required was small. Thus, Plaintiff was predominantly free to pursue his personal activities during his on-call time.

Additionally, the Court would note that even when Plaintiff had to respond to a second run, the time entailed was uniformly less than two hours. Thus, the times when Plaintiff's personal affairs were disturbed while he was on-call were of low frequency and of short duration. As stated by the Court in *Armitage, supra,* at page 433:

> Although the detectives' services are certainly beneficial to the public, to require compensation under these facts would require that all on call employees be paid for standby time. This would be a major change in the law of the FLSA.

Such is the case before this Court and this Court likewise declines to require the major change in the law of the FLSA that compensation of on-call time in this case would entail.

Based upon the above FINDINGS OF FACT AND CONCLUSIONS OF LAW, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that his on-call time was spent predominantly on behalf of Defendant employer. THE COURT, THEREFORE, FINDS IN FAVOR OF DEFENDANT. Judgment will be entered accordingly.

DATED this 14th day of February, 1996.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE