Kendel **BARTHOLOMEW** and Kristi Bartholomew, Plaintiffs,

v.

The **CITY OF BURLINGTON, KANSAS,** Defendant.

No. Civ.A. 96–4184–DES.

United States District Court, D. Kansas.

April 7, 1998.

---

Michael E. Francis, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Kristi and Kendel Bartholomew, Plaintiffs.

James S. Pigg, David R. Cooper, Fisher, Patterson, Sayler & Smith, Topeka, KS, for City of Burlington, Kansas, Defendant.

### *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

### I. BACKGROUND

Kendel and Kristi Bartholomew, former employees of the City of Burlington, Kansas, seek overtime compensation allegedly due under the Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et. seq.* Both plaintiffs seek overtime compensation for time spent "on-call" as employees of the City of Burlington. Plaintiffs also seek overtime compensation for time spent in briefings prior to going on shift. Plaintiffs claim compensatory damages, liquidated damages, and attorney's fees.

The City of Burlington ("City") denies liability under the FLSA and claims that its policies were not so restrictive as to prevent plaintiffs from using the time they were on-call for purely personal activities. The City contends that it has at all times acted in good faith and in accordance with the provisions of the FLSA.

This case is before the court on the City's Motion for Summary Judgment (Doc. 16). The court has considered the briefs of counsel, the uncontroverted facts and applicable law, and is now prepared to rule.

## II. SUMMARY JUDGMENT STANDARDS

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1985). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.

R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. FACTS

Kendel Bartholomew was hired by the City of Burlington as a police officer in April 1987. Kristi Bartholomew was first employed by the City in August 1993 as a public safety clerk. Kristi Bartholomew was promoted from the public safety clerk position to a patrol officer position on September 26, 1994. Steve Timmons is the Chief of Police for the City of Burlington and has held that position since June 1993.

Plaintiffs, as patrol officers, were required to be on call for eight hours following their normal eight-hour shift, or for 12 hours following a twelve-hour shift. Officers called back to work were compensated for a minimum of one hour of their time. Kendel Bartholomew learned of the on-call policy for the Burlington Police Department ("Department") within a few days of being hired. Kristi Bartholomew knew of the on-call requirement at the time she accepted the promotion to the patrol officer position.

Kristi Bartholomew resigned from her position with the City on March 30, 1995. Within a month of Kristi Bartholomew's resignation, Kendel Bartholomew also resigned. Both plaintiffs contend that they were constructively terminated.

Additional facts are set forth as necessary throughout the court's discussion.

## IV. DISCUSSION

### A. Compensability of Plaintiffs' On–Call Time

■ The test for determining whether an employee's on-call time constitutes working time is whether the time is spent predominantly for the employer's benefit or for the employee's. *Andrews v. Town of Skiatook, Okl.*, 123 F.3d 1327, 1330 (10th Cir. 1997) (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944)). Application of the test "requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances." *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). " 'Resolution of the matter involve[s] determining the degree to which the employee could engage in personal activity while subject to being called.' " *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1537 (10th Cir.1991) (quoting *Norton v. Worthen Van Service, Inc.*, 839 F.2d 653, 654 (10th Cir.1988)). In other words, the court must determine whether the restrictions on the employees' on-call time were so burdensome as to render it time predominantly spent for the benefit of the employer. *Gilligan v. City of Emporia, Kansas*, 986 F.2d 410, 412 (10th Cir.1993). Courts have considered the following factors in determining whether employee plaintiffs had use of on-call time for personal purposes: (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employees' movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employees could easily trade on-call responsibilities; (6) whether use of a pager

could ease restrictions; and (7) whether the employees had actually engaged in personal activities during call-in time. *See Owens v. Local No. 169*, 971 F.2d 347, 351 (9th Cir. 1992); *Burnison v. Memorial Hosp., Inc.*, 820 F.Supp. 549, 553 (D.Kan.1993).

In addition to the authorities set forth above, it is helpful to consider the following regulations promulgated by the United States Department of Labor concerning the compensability of on-call time:

An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call". An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 C.F.R. S 785.17.

Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work.

29 C.F.R. S 553.221(c).

■ The critical issue is "whether the employee can use the [on-call] time effectively for his or her own purposes". *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671 (5th Cir.1991). However, "this does not imply that the employee must have substantially the same flexibility or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject." (citations omitted). *Id.* at 677.

### 1. The Agreement of the Parties

There is no evidence that any written agreement existed between plaintiffs and the City. Nor is there evidence of any implied agreement that plaintiffs would be compensated for their on-call time. Indeed, plaintiffs concede that they were aware of the City's on-call policy and yet continued their employment with the Burlington Police De-

partment knowing their employment required such on-call duty.

## 2. Nature and Extent of the Restrictions

Unless otherwise relieved because of illness, leave, or vacation, plaintiffs, as patrol officers for the City of Burlington, were required to remain in an "on-call" status for a period of eight hours immediately following their regularly scheduled eight-hour day shift. The City's on-call officers were given police radios and were generally required to stay within the limits of the city. They were not required, however, to remain at the Police Department or other city premises and could spend their on-call time at their homes. The evidence establishes that plaintiffs were subject to call-backs, on average, less than once per week. Department rules did not provide for any specific response time, although plaintiffs understood the requirement to be one of "as soon as possible." There is no evidence that the response time was punitively enforced. On-call officers were not required to respond in uniform, although plaintiffs suggest it is a practice that was encouraged. Plaintiffs were permitted to trade on-call time, although there is some dispute regarding how easy it is to do.

The City contends that plaintiffs' on-call time is not compensable because its policies were not so restrictive as to prevent plaintiffs from using the time that they were "on-call" for purely personal activities. Plaintiffs contend that the nature and extent of the restrictions compel a finding that their on-call time is compensable.

Although plaintiffs were clearly permitted to spend their on-call time at home, they argue that they were "functionally" burdened with an on-premises living requirement. According to plaintiffs, the circumstances of their time spent on-call while employed by the City are analogous to those of the plaintiffs in *Armour*. In that case, the Supreme Court held that firefighters who spent their on-call time in amusements or in idleness while subject to call were still within the overtime compensation provisions of the FLSA. *Armour,* 323 U.S. at 126, 65 S.Ct. 165. Plaintiffs suggest that although they could engage in personal activities while on-call, they are likewise entitled to overtime compensation. Plaintiffs state that the "only difference" between this case and the *Armour* case is that, unlike the *Armour* plaintiffs, the City of Burlington permitted them to remain at home during their on-call shifts.

Plaintiffs' argument misses the point of the *Armour* Court's rationale. The freedom to remain at home while on-call is not merely the "only difference" between this case and the *Armour* case, it is an essential difference. It is also a principal basis for the Supreme Courts's holding that the firefighters were within the overtime compensation provisions of the FLSA. Plaintiffs' argument is not supported by law and their suggestion that the court disregard the difference between home and work premises renders meaningless any inquiry about the existence of an employer's on-premises living requirement.

Plaintiffs similarly argue that they were confined to their homes while on-call. This argument, however, is inconsistent with the Burlington police department's practice of issuing handheld radios for use by on-call officers. The purpose of the radios was to enable the on-call officer to move about the city as long as he or she remained within radio range, which included the entire city. Pursuant to department policy, plaintiffs were free to go about town subject only to the restrictions that they maintain themselves in a condition to immediately resume duty and respond to a callback as soon as possible. There was no requirement, moreover, that police officers live within the city limits.

Despite the presence of what appears to be a relatively unrestrictive on call policy, plaintiffs advance what might be termed a "constructive confinement" theory, implying that the department's on-call policy was far more restrictive in practice than in principle. According to plaintiffs, the City's prohibition against the personal use of the on-call patrol car, combined with the City's requirement that plaintiffs respond to call-outs "immediately" and in the patrol car, prevented travel away from home. Although this argument initially appears convincing, it losses much of its force in light of plaintiffs' deposition testi-

mony. Kristi Bartholomew testified that she attended church, shopped, and visited her in-laws while on-call. Likewise, Kendel Bartholomew testified that he rented videos and shopped while on-call. As their own testimony establishes, plaintiffs were not, as they suggest, "tethered" to their home. And the mere fact that they may have had to spend some time at home that they otherwise might have spent elsewhere is not sufficient to make on-call time compensable under the FLSA. *Boehm v. Kansas City Power and Light Co.*, 868 F.2d 1182 (10th Cir.1989).

The evidence shows that plaintiffs were subject to call-backs, on average, less than once per week.[1] Plaintiffs suggest that the frequency of call-backs is immaterial in this case because they were confined to their home as a result of the department policy prohibiting the personal use of patrol cars. The court has already addressed and rejected plaintiffs' confinement argument, and will therefore address the frequency of calls as a significant factor in determining the nature and extent of restrictions imposed during the on-call period.

Plaintiffs argue that this case is controlled by the decision in *Renfro*, the sole Tenth Circuit authority finding on-call time compensable. 948 F.2d at 1529. The court disagrees. The frequency of call-backs was much higher in *Renfro* than in the present case. The firefighters in the *Renfro* case were "called in" three to five times per day and had been called in on as many as 13 occasions in a twenty-four hour period. 948 F.2d at 1535. In *Renfro*, the 10th Circuit affirmed the district court which found:

> [T]he frequency with which Emporia firefighters are subject to call-backs readily distinguishes this case from cases which have held that on-call time is non-compensable. In many of those cases, the probability of an employee being called in, and thus, the probability of disruption of the employee's personal activities, was minimal.

*Renfro v. City of Emporia, Kansas*, 729 F.Supp. 747, 752 (D.Kan.1990). Rather than being called back three to five times per day like the *Renfro* firefighters, plaintiffs were subject to call-backs, on average, less than once per week. This considerable difference in the number of times plaintiffs were called back as compared to the firefighters in *Renfro* clearly distinguishes the present case from *Renfro* and aligns it squarely with those cases in which the courts found non-compensable on-call time. *See, e.g., Gilligan*, 986 F.2d at 411–13 (on-call time not compensable because plaintiffs were called back less than once and were free to pursue personal activities with little interference while waiting to be called).

Plaintiffs also claim that the department's response time requirement was unduly restrictive. It is undisputed that the department regulations did not provide for any fixed time for responding while on-call. Nonetheless, citing paragraph four of Departmental Directive 83–11, plaintiffs suggest that the department required "immediate" response. Departmental Directive 83–11, however, does not address response time. Instead, it states that on-call officers "shall be required to maintain himself in a fit physical and mental condition to immediately resume duty...." The only evidence submitted of a required response time is contained in deposition testimony, none of which establishes any fixed time for responding while on-call. For example, Kristi Bartholomew stated that Chief Timmons wanted on-call officers to respond "as soon as possible." Kendel Bartholomew stated that while he was not aware of any specific response time, he understood that it "just better be quick." Similarly, Chief Timmons stated that he required an officer to respond "as soon as he can." This absence of any fixed time requirement appears to the court to allow for some additional flexibility over a fixed response time of, for example, five to ten minutes. But even if this "as soon as possible" response requirement is construed as more

---

1. Plaintiffs attempt to controvert the frequency of recorded call-backs by asserting that they did not always write down the time that they worked as a favor to Chief Timmons. Plaintiffs provide no evidence, however, of the frequency of this chari-table conduct. Nevertheless, even under the favorable presumption that the actual frequency of call-backs was double what plaintiffs recorded, they would have been subject to call-backs, on average, about once per week.

restrictive than a fixed time requirement, it does not necessarily follow that it is unduly restrictive.

In *Andrews v. Town of Skiatook*, the Tenth Circuit addressed the significance of a similar response time for an emergency medical technician ("EMT"). 123 F.3d 1327 (10th Cir.1997). In *Andrews*, an on-call EMT was free to engage in any activity of his choosing as long as he remained clean, did not drink alcohol, and could respond to the ambulance station within five to ten minutes. Notwithstanding the required minimal response time, the court found the EMT's on-call time was predominantly for his personal benefit, and thus not compensable under the FLSA. Here, the facts must be construed in a light most favorable to plaintiffs. Still, even assuming the most limited response time, this factor does not weigh heavily in plaintiffs' favor considering the conclusion of the *Andrews* court.

Plaintiffs next contend that they could not easily trade on-call responsibilities with other officers. According to Kristi Bartholomew's deposition testimony, trading on-call responsibilities as a patrol officer was not easily done because the City was "short staffed." The court will consider this factor in plaintiffs' favor. Plaintiffs also contend that use of a pager under the circumstances would have been unhelpful since they were required to respond immediately in a patrol car. This argument has already been addressed and rejected in light of plaintiff's testimony that they were able to attend church, shop, visit in-laws and rent videos while on-call. Use of a pager during these activities, the court believes, would have been at least as helpful as use of a police radio.

An obvious but important factor in analyzing the nature and extent of the restrictions on plaintiffs' on-call time is whether plaintiffs had actually engaged in personal activities during on-call time. Plaintiffs concede that they engaged in personal activities during on-call time, but contend they could engage only in those activities which could be enjoyed at home since they were restricted by Departmental Directive 83–11 requiring them to respond in a patrol car which could not also be used for personal business.

Again plaintiffs advance their confinement to home argument, and again the court rejects it as inconsistent with their own testimony and other evidence. The inquiry under this factor is whether plaintiffs engaged in personal activities during on-call status, and the undisputed facts indicate that they did.

### 3. Relationship Between Services Rendered and On–Call Time

The relationship between the services rendered by plaintiffs and their on call time is readily apparent. As plaintiffs' jobs were to respond to crime scenes and other police emergencies, it is obvious that they must not have done anything during their on-call period which would impair their ability to function as police officers if called upon to do so. This, of course, may have imposed certain restrictions on the plaintiffs' on-call activities. While the court recognizes that plaintiffs' time on-call somewhat restricted their personal activities, "the test is not whether there was some restriction on Plaintiff[s'] personal activities. Rather the test is whether Plaintiff[s'] on-call time was spent predominantly for the benefit of [their] employer." *Andrews*, 123 F.3d at 1332. Therefore, even though plaintiffs rendered important public services, the relationship between those services and the on-call time, standing alone, does not require finding the on-call period compensable.

### 4. The Circumstances as a Whole

 The issue in this case is whether the restrictions on plaintiffs' on-call time were so severely burdensome as to render the on-call time predominately spent for the benefit of the City. *Gilligan*, 986 F.2d at 412. Under this standard, it is apparent that even when the facts are considered most favorably to plaintiffs, their on-call time was predominately their own, not the City's. "The mere fact that the plaintiffs may not use their on-call time as they wish or that they may have to spend some time at home that they otherwise might spend elsewhere is not sufficient to make on call time compensable under the FLSA." *Burnison v. Memorial Hosp., Inc.*, 820 F.Supp. 549, 555 (D.Kan.1993) (citing *Boehm*, 868 F.2d at 1185). The plaintiffs

were not, as they suggest, confined to their home. The primary restriction on plaintiffs' on-call time was the unspecific response time coupled with department policy requiring plaintiffs to respond in a patrol car which could not also be used for personal business. But plaintiffs' own testimony shows they were not prevented from actually engaging in activities away from their home. Plaintiffs' testimony, along with the City of Burlington's small size (twenty-two blocks north to south and fifteen blocks east to west) and the infrequency of call backs "mitigate any inference that the plaintiffs' freedom of movement or ability to engage in activities is so severely restricted by the [limited] response time that the plaintiffs' time [was] not their own." *Id.*

The court finds that plaintiffs have failed to establish a genuine issue of material fact requiring submission of plaintiffs' arguments to a jury. The undisputed facts show that plaintiffs' on-call time was spent primarily for plaintiffs' benefit. The City is therefore entitled to summary judgment as a matter of law on plaintiffs' claims for on-call compensation.

### B. Compensability of plaintiffs' Time Spent in Briefings

■ The City also seeks summary judgment on plaintiffs' claims seeking compensation for time spent in briefings prior to going on shift. These briefings were conducted on the way to work, after the officer going off duty picked up the replacement officer coming on duty. The length of the briefing was a function of the amount of activity occurring during the prior shift. The on duty officer generally picked up his or her replacement within 15 to 30 minutes of the start of the next shift. According to Kendel Bartholomew, the briefings sometimes required up to 30 minutes to complete.

Section 4 of the Portal–to–Portal Act, which controls all claims after May 14, 1947, excludes from FLSA coverage and thus renders non-compensable: (1) walking, riding or traveling to and from the actual place of performance of the principal activity, or activities which such employee is employed to perform; and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to

the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. 29 U.S.C. § 254(a). The Portal–to–Portal Act further provides:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

*Id.*

Based on this statute, the City is not required to compensate officers for commuting time in city vehicles if the City can establish that it had an agreement with its employees with respect to the use of the vehicle. This agreement requirement may be satisfied through "a formal written agreement between the employee and employer, a collective bargaining agreement between the employees [sic] representative and the employer, or an understanding based on established industry or company practices." H.R.Rep. No. 104–585 (1996). Here, plaintiffs had an understanding based on the City's practices regarding the use of the vehicle. This understanding is sufficient to meet the agreement requirement under the Portal–to–Portal Act. Therefore, it would seem that the City is not required to compensate officers for their time commuting in police vehicles.

Plaintiffs argue, however, that by conducting briefings during the commute, that time became compensable. In *Steiner v. Mitchell,* the Supreme Court stated that "activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the [FLSA] if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded

by Section 4(a)(1)." 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956). Here the parties do not dispute that ordinary commuting time is excluded from FLSA coverage. Thus, the question is whether conducting the briefings during travel time transforms plaintiffs' non-compensable travel time to an integral part of their principal activity.

Plaintiffs suggest the *Steiner* case supports a finding that their briefing time is compensable. The *Steiner* Court held that changing clothes and showering were an integral and indispensable part of principal work for battery factory workers who used toxic materials and were compelled by circumstances to change and shower in facilities that the employer was required to provide by state law. 350 U.S. at 247, 76 S.Ct. 330. The *Steiner* case is readily distinguishable, however. Unlike the briefings in this case, the nature of the activities found compensable in *Steiner* were such that they could not be performed during the employee's commute to or from work. 350 U.S. at 247, 76 S.Ct. 330.

Plaintiffs' reliance on *Graham v. City of Chicago*, 828 F.Supp. 576 (N.D.Ill.1993), is also unhelpful. The Graham court concluded that transporting police canines to work was a primary activity that was compensable under the FLSA. However, the *Graham* court determined that transporting the canines was neither a preliminary nor a postliminary activity, because transportation of the dogs occurred after the officers began their principal activity in the morning of feeding and preparing the dogs for the day's work, and before the end of the principal activity at night upon returning home. 828 F.Supp. at 582. In the present case, plaintiffs engaged in no work related activity prior to being picked up by the officer going off duty.

The court is not persuaded that the kind of informal briefing conducted between shifts in this case is enough to make plaintiffs' daily commute time compensable under the FLSA. Although the briefings are arguably for the City's benefit, the travel time, as time spent getting to the workplace, is nonetheless time spent predominantly in plaintiffs' own interest. Accordingly, the court finds that under the circumstances, the commuting/briefing time is more appropriately characterized as a preliminary activity and therefore not compensable under 29 U.S.C. § 254(a).

▌ Furthermore, even if the statute did not preclude recovery of compensation for plaintiffs' travel time, the court finds the doctrine of *de minimis non curat lex* applicable to defeat the City's liability. Generally, employees cannot recover for otherwise compensable time if it is *de minimis*. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). *See* Veech & Moon, *De Minimis Non Curat Lex*, 45 Mich.L.Rev. 537, 551 (1947). As plaintiffs contend, they are sometimes picked up as much as thirty minutes before their shift begins. After subtracting for the necessary travel time, however, even a thirty-minute briefing would only require a small amount of time in addition to actual travel time. At most, therefore, plaintiffs occasionally spend up to an additional fifteen minutes preparing for work. In light of the benefits accruing to plaintiffs from use of the city's vehicles for commuting, the administrative difficulty of recording the time, and the irregularity of the additional pre-shift work, the court finds this time within the *de minimis* rule. *See Lindow v. United States*, 738 F.2d 1057 (9th Cir.1984).

The court again finds that plaintiffs have failed to establish a genuine issue of material fact requiring submission of their arguments to a jury. The undisputed facts show that plaintiffs' travel time was a preliminary activity and therefore not compensable under 29 U.S.C. § 254(a). Furthermore, plaintiffs' uncompensated time spent preparing for work was *de minimis*. The City is therefore entitled to summary judgment as a matter of law on plaintiffs' compensation claims for time spent in pre-shift briefings.

### C. Violation of Due Process Claim

▌ Defendant moves for judgment on plaintiffs' claims of violation of due process property interest in continued employment. The Due Process Clause of the Fourteenth Amendment prohibits governmental deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV. *See Baker v. McCollan*, 443 U.S. 137,

145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). "In determining whether an individual has been deprived of his or her right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Farthing v. City of Shawnee,* 39 F.3d 1131, 1135 (10th Cir.1994) (citations omitted). In light of this framework, the court turns to the threshold issue of whether plaintiffs possessed a protected property interest in continued employment with the City.

 Property interests subject to due process protection "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "In the context of a public employee ... the touchstone is whether, under state law, the employee has a legitimate claim of entitlement in continued employment, as opposed to a unilateral expectation or an abstract need or desire for it." *Farthing,* 39 F.3d at 1135 (citing *Roth,* 408 U.S. at 577, 92 S.Ct. 2701; *Koopman v. Water Dist. No. 1 of Johnson County, Kan.,* 972 F.2d 1160, 1164 (10th Cir.1992)). Under Kansas law, it is well-settled that absent an implied or express contract between an employee and his or her employer covering the duration of employment, the employment relationship is terminable at the will of either party. *Johnston v. Farmers Alliance Mutual Ins. Co.,* 218 Kan. 543, 545 P.2d 312 (1976). An employee terminable at the will of the employer does not possess a protected property interest in continued employment. *Id.* at 1136 (citing *Stoldt v. City of Toronto,* 234 Kan. 957, 678 P.2d 153 (1984)). An employee terminable only for cause or fault, however, does possess a protected property interest. *Farthing,* 39 F.3d at 1136 (citing *Gorham v. City of Kansas City,* 225 Kan. 369, 372, 590 P.2d 1051 (1979)).

 Plaintiffs claim they had an implied employment contract with the City such that they could be terminated only for "just cause." The City denies the existence of any such contract. The formation of an implied contract in Kansas requires a proverbial "meeting of the minds" to which bargaining is an essential prerequisite. *Berry v. General Motors Corp.,* 56 F.3d 1233, 1237 (10th Cir.1995) (citing *Sidwell Oil & Gas Co. v. Loyd,* 230 Kan. 77, 630 P.2d 1107 (1981)). As evidence of an implied contract, plaintiffs point to the City's personnel manual and their own unilateral expectations of for-cause employment. None of this evidence is sufficient, however, to establish that the required "meeting of the minds" took place.

 Plaintiffs cannot rely on their own unilateral expectation of continued employment. *Berry,* 56 F.3d at 1237. Nor can they rely on the existence of the personnel manual. Kendel Bartholomew may not rely on the existence of the personnel manual since, according to his deposition testimony, he never read the personnel manual until after he was hired. As such, the mere existence of the personnel manual, allegedly containing "for cause" termination language, cannot support a finding that the terms contained therein were actually bargained for. Since personnel rules which are not bargained for cannot alone form the basis of an implied contract of employment, *Conyers v. Safelite Glass Corp.,* 825 F.Supp. 974, 978 (D.Kan.1993) (citing *Copple v. City of Concordia, Kan.,* 814 F.Supp. 1529 (D.Kan.1993)), Kendel Bartholomew may not rely on the existence of the personnel manual as the basis of an implied employment contract with the City. *See Berry v. General Motors Corp.,* 838 F.Supp. 1479, 1495 (D.Kan.1993), *aff'd,* 56 F.3d 1233 (10th Cir.1995).

Kristi Bartholomew is also prevented from relying on the existence of the personnel manual, but for a different reason. Unlike Kendel Bartholomew, she actually read the personnel manual before accepting employment. However, the "for cause" language of the manual does not apply to probationary employees. Although Kristi Bartholomew points out that she was five days past the sixth month probationary period at the time she was forced to resign, the undisputed facts establish that she resigned before the city council would have made a decision

about the possibility of removing her from probationary status. It is also undisputed that Kristi Bartholomew understood that, as a probationary employee, she could be terminated without cause.

The court finds insufficient evidence to submit plaintiffs' implied contract theory to a jury. Plaintiffs have presented no competent evidence of an implied contract and therefore had no property interest in continued employment. Because plaintiffs did not have a protected property interest, they did not have the right to any particular process. The court thus grants the City's motion for summary judgment on plaintiffs' violation of due process claim.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion for Summary Judgment (Doc. 16) is granted.