*383 OPINION OF THE COURT
Francis T. Collins, J.
This is a claim pursuant to the Fair Labor Standards Act of 1938 (29 USC § 201 et seq. [hereinafter FLSA]) to recover the sum of $13,747.50 due as a result of 235 hours of overtime which claimant alleges he earned, but was not compensated for, while driving a State vehicle in the course of commuting from his home to his assigned work location. At the time of trial claimant had been employed for 17 years by the Office of General Services (OGS) as a Construction Inspector, grade 19. His assigned work location, from at least June of 1996, was the Empire State Plaza in Albany, New York. Claimant’s regular hours of employment were from 7:00 a.m. to 3:30 p.m. and prior to June 17, 1996 his official station had been his home in Cooperstown, New York. An “official station” is a location designated by the employer and the “purpose of designating an official station is to establish a point of reference to determine when an employee is in travel status and, therefore, eligible for reimbursement for travel expenses” (exhibit 13-A, at 3). Claimant testified that prior to June 17, 1996, he commuted 140 miles on a daily basis from his home to the Empire State Plaza and was reimbursed at a rate that averaged 29V2 cents per mile for a weekly travel expense income of $206.50. In an effort to save money, OGS determined to issue State vehicles to certain employees rather than paying mileage reimbursement. On June 17, 1996, claimant was sent a direct order from his superior, exhibit 7, which provides:
“On June 17, 1996 your official station changed from your home to Homer Folks. You are hereby given a direct order to begin driving the provided State Vehicle for all reimbursable mileage no later than June 24, 1996.
‘Your job assignment does not change at this time, and you are to be at your job assignment at your normal designated start time and begin your return trip at your normal designated completion time.
“This is a direct order and should you fail to honor this order appropriate steps will be taken.”
Claimant protested in writing the requirement that he drive the State vehicle from his official station to his assigned work location and was advised that if he did not do so it would be considered insubordination and grounds for dismissal and suspension without pay. As a consequence, claimant did use the State vehicle in his daily commute. On October 8, 1996, a memorandum was issued to claimant (exhibit 10) which states:
*384 “This memo serves as notification that your official station for travel reimbursement purposes, as defined in the General Administrative Manual and by the rules of the State Comptroller, has been changed. Due to the fact that we have closed the field office at Oneonta, your official station must be changed from Homer Folks Facility to the nearest active field office, which is Hale Creek AS ACT, Johnstown. Travel vouchers submitted for travel should reflect this change.
“The rules for assignment of this official station are described in the attached memorandum dated May 9, 1996. If you believe that your official station assignment is not in accordance with the attached description, please advise your supervisor immediately.
“Please note that the assignment of your official station is • only for the purpose of travel reimbursement and may or may not coincide with your work assignment. You are required to report to an assigned work location, at your designated starting time for the work day, and be at an assigned work location at your designated quitting time for the work day. If you have any questions concerning your work location assignment, contact your supervisor.”
Claimant’s new official station in Johnstown, New York, was 46 miles from his assigned work location at the Empire State Plaza. Claimant interpreted various State publications, which generally proscribed the personal use of a State vehicle, as prohibiting his use of the State vehicle for more than 46 miles of the one-way commute from his home to his assigned work location in Albany. As a consequence, without advising his superiors, claimant began a practice on October 24, 1996 of driving his personal automobile to a Department of Transportation facility in Sharon Springs, New York, where he would park his private vehicle and then drive his State-owned vehicle to his assigned Albany work location. That process was reversed during claimant’s return trip home. Claimant testified that he is seeking to recover overtime for those hours he operated the State vehicle in commuting from Sharon Springs to Albany and back. Claimant’s theory is that by requiring him to use the State vehicle his employer was taking personal time from him for which he should be compensated pursuant to the FLSA.
At the close of the evidence, the defendant moved to dismiss the claim upon the ground that claimant had failed to prove a prima facie case as the Portal-to-Portal Act of 1947 (29 USC § 251 et seq.) generally prohibits the payment of overtime for *385 time spent traveling to and from work. That motion will now be addressed.
The FLSA was passed in 1938 in response to a congressional finding that some industries “engaged in commerce, maintained labor conditions which were detrimental to a minimum standard of living” and attempts to “eliminate unfair labor practices without substantially curtailing employment or earning power” (Aguilar v United States, 36 Fed Cl 560, 563). With respect to this litigation, the important aspect of the FLSA is that it requires that an employee working in excess of 40 hours per week must be paid overtime at a rate not less than IV2 times the rate at which he is employed (29 USC § 207 [a] [1]; Ballard v Community Home Care Referral Serv., 264 AD2d 747; Mulverhill v State of New York, 257 AD2d 735). In 1946, the United States Supreme Court gave a broad definition to the word “work” when it held that employees walking to work and engaging in preparatory activity, such as putting on aprons and overalls, were engaged in work that required the payment of overtime pursuant to the FLSA (Anderson v Mt. Clemens Pottery Co., 328 US 680). In Parkhill v Todd Shipyards Corp. (190 Misc 782, 783), the effect of the Anderson case was described as follows:
“The enlargement of the concept of ‘work’ under the act resulted in a tidal wave of litigation. Industry was faced with the possibility of staggering judgments.
“The spectre of these possible tremendous recoveries * * * motivated Congress to act after extensive committee hearings were had.”
The pertinent provisions of the Portal-to-Portal Act, as it appeared prior to its 1996 amendment, provided in 29 USC § 254 (a) that the following activities were not compensable under the FLSA:
“(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
“(2) activities which are preliminary to or postliminary to said principal activity or activities,
“which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.”
The foregoing language was interpreted by the United States Department of Labor in 29 CFR 785.35 as follows: “An em *386 ployee who travels from home before his regular workday and. returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime.”
In the Aguilar case (supra), the court noted that paragraphs (1) and (2) of subdivision (a) of section 254 enumerated two types of noncompensable activities. The first, contained in paragraph (1), is walking, riding, or traveling to and from the actual place of work, and the second concerns activities that are preliminary or postliminary to the principal activity or activities of employment. In the case of Steiner v Mitchell (350 US 247, 256), the Supreme Court created an exception with respect to preliminary and postliminary activities and allowed such conduct to be compensable under the FLSA “if those activities are an integral and indispensable part of the principal activities * * * and are not specifically excluded by Section 4 (a) (1).” Aguilar involved the issue of whether border patrol canine handlers employed by the Immigration and Naturalization Service were entitled to overtime compensation for time spent commuting to and from work with their dogs in Government-provided vehicles. The canine handlers were required to use the Government vehicles and were prohibited from making any personal use of those vehicles during their travel time to and from their homes to their assigned duty point. The court (at .565) ruled as follows: “[T]he actions defined in 29 U.S.C. § 254(a)(1) are separate, noncompensable activities from those cited in § 254(a)(2). Thus, preliminary and postliminary activities are to be considered apart from travel to and from work. The Supreme Court’s holding in Steiner supports this conclusion. The Court there held that ‘integral and indispensable’ activities were compensable even if performed ‘before or after the regular work shift’ unless those activities ‘are not specifically excluded by Section 4(a)(1).’ Steiner, 350 U.S. at 256, 76 S.Ct. at 335. Since ‘walking, riding, or traveling to and from the actual place of performance of the principal activity or activities’ are specifically excluded in that section, the Steiner exception does not apply to the facts of this case.”
Prior to the 1996 amendment to 29 USC § 254 (a), it was settled law that a public employee compelled to use an employer’s vehicle to commute to and from work was not entitled to compensation under the FLSA (Reich v New York City Tr. Auth., 45 F3d 646; Hellmers v Town of Vestal, 969 F *387 Supp 837). However, this construction of section 254 came into question when the Wage and Hour Division of the United States Department of Labor issued opinion letters on April 5, 1994 (1994 WL 1004770) and August 5, 1994 (1994 WL 975107) stating that time spent by employees traveling from home to the first work site in a company vehicle after receiving instructions for the day’s work activity by radio or telephone from the employer’s dispatcher constituted compensable time under the FLSA. These opinion letters created an immediate backlash by employers and some labor organizations which resulted in a proposal before Congress for corrective legislation (see, testimony from hearings before House Subcomm on Work Force protections at 1995 WL 642214; 1995 WL 642212; 1995 WL 642205; 1995 WL 735662; 1996 WL 281315). In 1996, Congress amended subdivision (a) of 29 USC § 254 which now reads as follows:
“(a) Activities not compensable
“Except as provided in subsection (b) of this section, no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh-Healey Act [41 U.S.C.A. § 35 et seq.], or the Bacon-Davis Act [40 U.S.C.A. § 276a et seq.], on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—
“(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
“(2) activities which are preliminary to or postliminary to said principal activity or activities,
“which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer’s vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee’s principal activities if the use of such vehicle for travel is within the normal commuting area for the employer’s business or establishment and the use of the employer’s vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.” (Emphasis added.)
*388 The issue for determination is whether the 1996 amendment altered the rule expressed in prior case law that time spent by an employee traveling to and from his or her principal place of employment in a vehicle provided by an employer is not compensable under the FLSA.
In the interpretation of a Federal statute State courts will afford great deference to the construction of a statute adopted by Federal courts (Myer v Shields & Co., 25 AD2d 126; see, People v Kin Kan, 78 NY2d 54). At this juncture, a review of-Federal cases interpreting the 1996 amendment is appropriate.* In the case of United Transp. Union Local 1745 v City of Albuquerque (178 F3d 1109, 1117), the Tenth Circuit Court of Appeals interpreted the amendment as follows: “The Portal-to-Portal Act was subsequently amended by the Employee Commuting Flexibility Act of 1996 to clarify that otherwise noncompensable commuting to work is not compensable merely because the employee uses his employer’s vehicle.”
In the cases of Baker v GTE N. (110 F3d 28), Bartholomew v City of Burlington (5 F Supp 2d 1161) and Shepard v City of Burlington (1998 WL 240269, 1998 US Dist LEXIS 6913 [US Dist Ct, D Kan, Apr. 7, 1998, Saffels, J.]), the Federal courts applied the amendment and held that the time spent commuting to and from work in an employer’s vehicle was not compensable under the FLSA if the employer and employee had reached an agreement or understanding whereby the employee’s use of the vehicle was voluntary. While the court agrees with those holdings, our fact situation differs in that claimant did not consent to the use of the OGS vehicle but rather was compelled to use it under threat of dismissal. Thus, the issue distills to the effect of the amendment when the employee’s use of the employer’s vehicle is nonconsensual.
In the case of Bobo v United States (37 Fed Cl 690, affd 136 F3d 1465), border patrol agent dog handlers employed by the Immigration and Naturalization Service were compelled to use Federal vehicles in commuting to and from work with their assigned canines. The court reviewed existing case law and regulatory policy with regard to the compensability of work activities allegedly performed during the agent’s commute and, importantly, directly addressed the applicability of the 1996 amendment to section 254 (a) in those circumstances where there exists no understanding or agreement between the em *389 ployee and employer. Finding the amendment inapplicable in the absence of some agreement between the parties relative to the compensability of tasks performed while commuting, the court determined that preliminary or postliminary activities performed while traveling to or from work may be compensable under the Portal-to-Portal Act so long as they are integral to the employee’s principal work activity and not only incidental or de minimis.
In the case of Reich v Brenaman Elec. Serv. (1997 WL 164235, 5-6, 1997 US Dist LEXIS 4163, *15-16 [US Dist Ct, ED Pa, Mar. 28, 1997, Leomporra, J.]), the court discussed the amendment as follows:
“The amendment at issue did not create a third, distinct exception to the requirement that employers pay their employees for all principal activities. Instead, the amendment was placed in the statute below the two existing exceptions. Such a placement indicates that it is intended to clarify the limits of those exceptions and assist courts in determining the meaning of ‘principal activity,’ not that it creates a third exception * * *
“Congress clarified that the mere use of an employer’s vehicle by an employee, without further work performed for the employer, is not compensable.”
This court agrees with the interpretation of the 1996 amendment adopted in Reich (supra) as being to clarify the intent of Congress with respect to the two previously existing exceptions set forth in 29 USC § 254 (a) by establishing that when, by agreement, an employee uses an employer’s vehicle to commute to and from work within the normal commuting area of the employer’s business that time is not compensable. The court further agrees with the construction in Bobo (supra) that when there is no employer-employee agreement the amendment is simply inapplicable and the issue of the compensability of time spent commuting to and from work in an employer’s vehicle must be decided by analyzing the activities involved. Imposing that analysis upon the facts presented by this case, it is clear that claimant was merely traveling to and from his home to the actual place of the performance of his principal activities at the time he was operating the OGS vehicle and was not involved in any conduct that was integral and indispensable to his principal employment activities. Simple commuting to and from work in an employer’s vehicle, without more, is not compensable under the FLSA and is not made so by an employer restricting or prohibiting the personal uses to which such a vehicle may be put during the course of the com *390 mute. Since ordinary commuting is not compensable under the FLSA (Kavanagh v Grand Union Co., 192 F3d 269) the dismissal motion must be granted.

 This court’s research has failed to disclose any State cases addressing the issue.