PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 8/16/96**

TENTH CIRCUIT

---

MIKE LEE GRIMSLEY,

      Plaintiff - Appellee,

vs.

TERRY MACKAY, Inmate; WILLARD
EAST, Officer; UTAH DEPARTMENT
OF CORRECTIONS; GARY DELAND,
Executive Director, Utah Department of
Corrections,

      Defendants,

vs.

DON TAYLOR, Lieutenant, Officer Utah
State Department of Corrections; JOE
HUGHES, Officer; JOHN IRONS,
Officer; KEN HOGGAN; CHAD
TAYLOR; GERALD COOK; FRED
VAN DER VEUR; TOM T. HOUSE,

      Defendants - Appellants.

Nos. 95-4022
95-4078
(Consolidated)

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 90-CV-1030-W)

---

Frank D. Mylar, Assistant Attorney General, State of Utah (Jan Graham, Attorney

General, State of Utah, and Elizabeth King, Assistant Attorney General, State of Utah, with him on the briefs), Salt Lake City, Utah, for Defendants-Appellants.

Brian M. Barnard (Joro Walker, with him on the briefs), of the Utah Legal Clinic, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before KELLY, LOGAN and ENGEL,[1] Circuit Judges.

---

KELLY, Circuit Judge.

---

Several past and present officers and administrators of the Utah State Department of Corrections ("Defendants") appeal from the magistrate judge's orders awarding damages in favor of Plaintiff Mike Grimsley in his civil rights action against Defendants, 42 U.S.C. § 1983. The parties consented to disposition of this case by the magistrate judge. See 28 U.S.C. § 636(c)(1). We therefore review the magistrate judge's decision without intervening consideration by the district court, 28 U.S.C. §§ 636(c)(3), and reverse.

## Jurisdiction

This case began when Mr. Grimsley filed two suits under 42 U.S.C. § 1983, one against the Defendants House, Van Der Veur and Cook ("Administrators") and one against Defendants Don Taylor, Hughes, Irons, Hoggan and Chad Taylor ("Officers"). The magistrate judge consolidated the two cases, after which the cases proceeded as one,

---

[1]The Honorable Albert J. Engel, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

with Administrators and Officers treated as one group of defendants and all further docketing appearing under one case number. Defendants filed their first notice of appeal on January 25, 1995, Aplt. App. 187, after the magistrate judge entered his findings of fact and conclusions of law, Aplt. App. 80. Defendants' notice of appeal ripened on February 8, 1995 when the magistrate judge entered judgment on the findings and conclusions. See Fed. R. App. P. 4(a)(2). The February 8, 1995 judgment included an award of attorney fees. Although Defendants are deemed to have timely filed their notice of appeal, they failed to "specify the party or parties taking the appeal" as required by Fed. R. App. P. 3(c), but rather listed "TERRY MACKAY, et al." as the Appellants. Aplt. App. 187. Mr. MacKay was a settling defendant, not a party to the appeal. We then ordered the parties to address whether the court properly had jurisdiction over all defendants.

Defendants' attorneys dismissed this jurisdictional concern as a "non-issue." Aplt. Mem. Br. at 2. We do not view Defendants' right to appeal, nearly lost by the failure to heed our rules, as a non-issue. Fortunately for Defendants, they have perfected their right to appeal, albeit accidentally and notwithstanding the later filed notices of appeal purporting to cover the relevant judgments.

The Supreme Court has recognized that courts may find compliance with Rule 3 "if the litigant's action is the functional equivalent of what the rule requires." Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17 (1988). Amended Rule 3(c) allows for a

notice of appeal to be effective, even if all parties to the appeal are not named, if "it is objectively clear that a party intended to appeal." Fed. R. App. P. 3, advisory committee note, (1993 Amendment, note to subdivision (c)). Even prior to the amendment, we have held that documents other than the notice of appeal filed within the appropriate period, such as a docketing statement, may cure defects in the notice of appeal. See Ayala v. United States, 980 F.2d 1342, 1344 (10th Cir. 1992). In this case, Defendants filed a docketing statement on February 15, 1995, which was within the time allotted to file an appeal from the February 8, 1995 judgment. See Fed. R. App. P. 4(a)(1). The docketing statement lists as the parties filing the appeal "Officers, Don Taylor, John Irons, Joe Hughes, Ken Hoggan, and Chad Taylor; and Administrators, Gerald Cook, Tom House and Fred VanDerVeur," leaving no doubt as to which parties intended to appeal and curing the defect in the notice of appeal. The premature notice of appeal ripened upon filing of the judgment and was supplemented by the docketing statement. Therefore, we have jurisdiction over the February 8, 1995 judgment.

The district court's amended judgment, entered March 8, 1995, merely awards Plaintiff post-judgment interest accruing from September 14, 1994 and in no way alters our jurisdiction over the case. Post-judgment interest automatically accrues from the date of judgment even absent an express statutory provision so providing or express inclusion in the judgment itself. See 28 U.S.C. § 1961(a); Christian v. Joseph, 15 F.3d 296, 298 (3rd Cir. 1994). We urge all who venture into the federal courts to carefully familiarize

themselves with our rules lest they embarrass themselves and jeopardize the claims of their clients.

## Background

On February 18, 1990, prison guards at the Utah State Prison in Draper, Utah, released a prisoner named MacKay from his cell into the common area of the maximum security unit in order to mop up water. Plaintiff Grimsley, also an inmate in the maximum security unit, had flooded the unit by causing his sink and toilet to overflow beyond the parameters of his cell. Shortly after MacKay's release into the common area, Officer Irons noticed MacKay banging the mop wringer, ordered MacKay to return to his cell and called for assistance to Officers Hughes and Hoggan, who arrived shortly thereafter. Prison regulations prohibited Officers Hughes and Hoggan from forcibly engaging MacKay until a team of at least three and preferably five officers had assembled. See Aplee. Supp. App. 249 (FG 25/02.04(A)(4)(a)). Prison regulations also prohibited Officer Irons and Officer Chad Taylor, control room officers, from leaving their respective control rooms unattended in order to assist Hughes and Hoggan subdue MacKay. Aplt. App. at 209, 304. Officer Hughes telephoned Officer Don Taylor, who was the duty officer in charge of the prison that day. While Officer Don Taylor was rushing to the scene, MacKay approached Plaintiff's cell and began banging the mop wringer against the cell door. When the wringer was destroyed, MacKay retrieved a metal-edged "squeegee" and began banging it against the window of Plaintiff's cell door.

Believing himself immune from any physical danger, Plaintiff taunted and jeered MacKay. The window on Plaintiff's door soon shattered and MacKay threw the squeegee into Plaintiff's cell. Plaintiff continued to taunt MacKay, who proceeded to retrieve the long wooden handle of a scrub brush, return to Plaintiff's cell and throw the handle through the broken window of Plaintiff's cell. Plaintiff and MacKay threw the handle back and forth through the window, until MacKay's aim enabled him to strike Plaintiff directly in the head, crushing Plaintiff's eye. Plaintiff lost sight in the eye and now wears a glass eye. A sufficient number of officers congregated at the scene shortly after MacKay injured Plaintiff, but MacKay had already ceased his behavior and returned to his cell.

Discussion

We review a judgment rendered by a magistrate judge pursuant to 28 U.S.C. § 636(c) using the same standard applied to a judgment rendered by a district judge. Estate of Toyota of Jefferson, Inc. v. Vallette (Matter of Toyota of Jefferson, Inc.), 14 F.3d 1088, 1090 (5th Cir. 1994). Thus, we apply the clearly erroneous standard to the magistrate judge's findings of fact and review de novo questions of law and mixed questions of law and fact. Id. A finding of fact is clearly erroneous if it is without factual support in the record, Gant v. Grand Lodge of Texas, 12 F.3d 998, 1004 (10th Cir. 1993), cert. denied, 114 S. Ct. 1834 (1994), or, where "there is evidence to support it, [if] the reviewing court on the entire evidence is left with a definite and firm conviction that a

mistake has been committed." Hildebrand v. Comm'r of Internal Revenue, 28 F.3d 1024, 1026 (10th Cir. 1994) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

## I.  Administrators' Liability

The Eighth Amendment protects prisoners against cruel and unusual punishment, a right interpreted to impose a duty on prison officials to protect prisoners in custody from violence at the hands of other prisoners.  Farmer v. Brennan, 114 S. Ct. 1970, 1976-77 (1994).  However, in order to successfully assert a § 1983 claim under the Eighth Amendment for failure to protect, a plaintiff must show personal involvement or participation in the incident.  Mitchell v. Maynard, 80 F.3d 1433, 1441, (10th Cir. 1996). Supervisor status alone is insufficient to support liability, id.; see also Randle v. Parker, 48 F.3d 301, 303 (8th Cir. 1995); a supervisor is not liable under § 1983 for the actions of a subordinate unless an "affirmative link" exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise, Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993).

The magistrate judge made the following factual findings:  Administrator Cook was warden of the Utah State Prison until 1989, at which time he was promoted to Director of Institutional Operations; Administrator Cook "specifically discussed in 1989 the fact that training in the use of non-lethal weapons was needed"; Administrator House was deputy warden from 1984-89 but, by the time Mr. Grimsley was injured, he had been

assigned to direct the department of Adult Probation and Parole and "had no supervisory control or responsibility over" any member of the prison staff; Administrators Cook, House and Van Der Veur in the past had been responsible for making decisions and reviewing all proposed training programs and all training actually provided to the guards; in a memo dated October 26, 1989, Administrator Cook acknowledged the need to train prison guards in the use of non-lethal weapons; the Administrators knew that fights occurred in the prison that could result in bodily injury or death; the regulations partially formulated and reviewed by the Administrators prevented an officer not certified in the use of non-lethal weapons from deploying such weapons; and "[d]eployment of the water hose, the Mark 70 Stun Gun or aerosol mace would have diverted MacKay's attention and would have halted MacKay's attack of Grimsley before MacKay injured Grimsley's right eye." Aplee. Br. ex. A at 19-23. Based on these factual findings, the magistrate judge concluded that Administrators Cook and Van Der Veur's "conduct in not providing or ensuring that the officers received training on the use of readily available non-lethal weapons," and Administrator House's "conduct in helping draft the regulations requiring training . . . in the use of non-lethal weapons and then . . . disregarding the obligation to ensure that the officers received appropriate training," both constituted "a reckless and callous indifference" to Mr. Grimsley's constitutional rights. Id. at 29-30.

Accepting the magistrate judge's factual findings as not clearly erroneous, we hold that the Administrators' involvement in the incident in which Mr. Grimsley was injured is

insufficient as a matter of law to support either personal or supervisory liability under § 1983. See Mitchell, 80 F.3d at 1441. Although the Administrators at various times exercised responsibility over the creation and modification of the training programs used at the prison in the years preceding the incident, the uncontroverted facts indicate that not one of the Administrators was personally involved or ever supervised any of the Officers involved in the incident during which Mr. Grimsley was injured. Administrator House had ceased working at the prison facility the year preceding the incident and, when he returned to the prison in 1990, was assigned to work with Adult Parole and Probation, a position devoid of any supervisory or training responsibilities. Aplt. App. at 317-318. From January 1989 through March 1992, Administrator Cook was the prison's director of institutional operations, a position charged with administering the prison's culinary, medical, grievance and other services but with no responsibility to train or supervise officers. Id. at 234-37. Administrator Cook's 1989 memo, in which he merely requests training for the officers in non-lethal weapons, fails to establish the requisite affirmative personal link to impose liability. Administrator Van Der Veur no longer worked at the facility by the time Plaintiff was injured, but rather was employed as warden at a different prison.

The Administrators in no way personally participated in the incident in which Mr. Grimsley was injured. Past input into the formulation of prison regulations or acknowledgment of a general need to train guards is a connection far too attenuated to

support liability under § 1983.  Otherwise liability conceivably could be imposed upon any administrator who had ever contributed to the officers' training program no matter how far removed he is from the prison or the incident in question.  At some point, one's involvement simply becomes too tenuous to support liability.

## II.  The Officers' Liability

Unlike the Administrators, the Officers were personally involved in the incident in which Plaintiff was injured and, if the requisite facts were established, could be held liable.  See Mitchell, 80 F.3d at 1440-41.  The Supreme Court has instructed that to establish an Eighth Amendment claim based on a failure to prevent harm, the inmate must show that (1) he is incarcerated under conditions posing a substantial risk of serious harm, and (2) prison officials acted with a sufficiently culpable state of mind, known as "deliberate indifference."  Farmer, 114 S. Ct. at 1977.  Under the uncontroverted facts of this case, Plaintiff's claim fails to satisfy the first element of the Farmer test.  Accordingly, we need not discuss whether Mr. Grimsley's claim satisfies the second.

This case concerns the constitutionality of a response by prison officials to a disturbance caused by unruly inmates MacKay and Plaintiff.  The magistrate judge found: Defendants knew or should have known that MacKay was capable of breaking a cell door window; MacKay was armed and "plaintiff was at great peril" because he was not taking appropriate measures to defend himself; Defendants could have deployed the fire hose, the Mark 70 Stun Gun or chemical agents to effectively defend Plaintiff; both

Defendants' and Plaintiff's experts acknowledged that use of non-lethal weapons against MacKay would have been appropriate when he was retrieving the scrub brush handle before injuring Mr. Grimsley; and MacKay would have ended his rampage and returned to his cell had he seen the Mark 70 Stun Gun that might be deployed against him. Aplee. Br. ex. A at 13, 16-19. Based on these findings of fact, the magistrate judge concluded that the Officers' failure "to take action that would have ended MacKay's attack . . . amounts to recklessly disregarding the risk of harm to plaintiff's safety;" their "conscious decision to withhold protection in the face of an unjustifiably high risk of harm to plaintiff, caused plaintiff to suffer the unnecessary and wanton infliction of pain;" and "MacKay's assault of plaintiff was the direct and foreseeable result of the defendant officers . . . failure to protect." Id. at 28-29.

There exists no precise definition of those types of conditions of confinement that violate the first prong of the Farmer test by "posing a substantial risk of serious harm." Farmer, 114 S. Ct. at 1977. A prisoner must demonstrate that the deprivation was sufficiently serious and that "a prison official's act or omission . . . result[ed] in the denial of 'the minimal civilized measure of life's necessities.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). This is an objective standard. Such conditions have been found to exist where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer, for example by either separating the prisoner from other inmates who previously have attacked him on multiple

occasions, see Hayes v. New York City Dep't of Corrections, 84 F.3d 614 (2d Cir. 1996); Horton v. Cockrell, 70 F.3d 397, 399 (5th Cir. 1995), or providing adequate safety apparatus on an obviously dangerous machine, Bagola v. Kindt, 39 F.3d 779, 780 (7th Cir. 1994). In such cases, prison officials have a constitutional duty to take reasonable measures to protect prisoners against current threats of attack and other "'sufficiently imminent dangers' . . . likely to cause harm." Horton, 70 F.3d at 401 (quoting Helling v. McKinney, 113 S. Ct. 2475, 2480-81 (1993)).

In this case, Plaintiff simply cannot show that he was incarcerated under conditions posing a substantial risk of serious harm. Our review of the entire record convinces us that any factual findings to the contrary are without support in the record and therefore are clearly erroneous. Gant, 12 F.3d at 1004. Every witness for the defendants repeatedly testified that they believed MacKay posed no threat to Plaintiff because Plaintiff was safely locked behind the steel door of his cell and, moreover, that they had never heard of or witnessed any prisoner locked inside a maximum security cell sustaining an injury inflicted by an aggressor located outside the cell. See I Supp. R. 234, 236; II Supp. R. 538-39; III Supp. R. 692, 699-700, 713, 717, 718-19, 743-46, 754; VI Supp. R. 1250, 1338-39. According to these witnesses, the fact that the window in the cell door had been broken out did not increase the likelihood that MacKay would injure Plaintiff. I Supp. R. 234; III Supp. R. 744-45; VI Supp. R. 1339. Defendant's expert witness concurred in these views, V. Supp. R. 1031-33, 1125, 1133, and further testified

that he had never seen nor heard of a prisoner using a mop handle as a weapon, id. at 1119-20. We find that Plaintiff, securely locked by himself in a maximum security cell, was not confined under conditions posing a substantial risk of serious harm notwithstanding the fact that an inmate located outside the cell succeeded in inflicting injury upon him.

The evidence further indicates that Plaintiff likewise perceived himself to be immune from harm due to his confinement behind the steel barrier of his maximum security cell. MacKay's only weapon was a mop handle which, together with the diameter of the aperture of the window permitting contact between Plaintiff and MacKay, suggests that Plaintiff had many ways to protect himself from serious harm. He could have placed his mattress against the broken window as a shield; retreated into the depths of his cell; crawled under his bed; crouched beneath the broken window against the steel door to avoid exposure to MacKay; or turned his back to MacKay and covered his head and neck area. The evidence shows that instead of protecting himself Plaintiff placed himself in a position of danger and even continued to taunt MacKay and poke at MacKay through the broken window. He neither recognized nor anticipated the harm that occurred. The fact that MacKay injured Plaintiff, standing alone, is not nearly enough to satisfy this first prong of the Farmer test. Any factual findings to the contrary are clearly erroneous.

The prison regulations further suggest that Plaintiff's incarceration in his solitary

maximum security cell did not constitute conditions posing a substantial risk of serious harm. The regulations call for the immediate deployment of nonlethal force in three situations: (1) an inmate injuring another inmate while both are in a common cell; (2) an inmate injuring another while both are in a common area; and (3) an inmate causing damage to the facility while in a common area. Aplee. Supp. App. 252 (FG 25/03.01(C)). The fact that these regulations do not apply to the situation involved in this case, i.e., an inmate in the common area attempting to inflict injury on an inmate securely locked in a maximum security cell, indicates that such a situation was not perceived to be one that posed a substantial risk of injury to an inmate.

As the magistrate judge correctly noted, various other tactics or responses to the disturbance caused by Plaintiff and MacKay, including the deployment of force, may have prevented Plaintiff's injury. However, it is immaterial whether the Officers' pursued what in retrospect appears to be the most effective response if Plaintiff was not incarcerated under conditions posing a substantial risk of serious harm. While we are sympathetic to Plaintiff's grievous injury, the issue is not whether Defendant Officers would have prevented Plaintiff's injury had they pursued an alternative course of action. Because Plaintiff's incarceration did not subject him to a substantial risk of serious harm, Defendant Officers' response to the incident in which Plaintiff was injured did not violate the Eighth Amendment.

REVERSED.