**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 14 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JUDY GAIL IWANSKI, Personal
Administrator of the Estate of Don
Douglas Iwanski, deceased,

        Plaintiff-Appellant,

v.

OKLAHOMA DEPARTMENT OF
CORRECTIONS; LARRY FIELDS,
Director of the Department of
Corrections; JOHN MIDDLETON,
Warden, Northeast Oklahoma
Correctional Center; HOWARD RAY,
Deputy Warden, Northeast Oklahoma
Correctional Center; CHARLES
GALIPEAU, Chief of Security,
Northeast Oklahoma Correctional
Center; TROY ALEXANDER, Unit
Manager, Northeast Oklahoma
Correctional Center; RANDALL
BURKE, Corrections Officer,
Northeast Oklahoma Correctional
Center, all in their official and
individual capacities,

        Defendants-Appellees.

No. 98-5135
(D.C. No. 97-CV-103-B)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** [*]

Before **BALDOCK** , **REAVLEY**,[**] and **BRORBY** , Circuit Judges.

Plaintiff Judy Iwanski brought an action in the district court pursuant to 42 U.S.C. § 1983 on behalf of the estate of her son, Don Iwanski (Iwanski). Plaintiff sought damages resulting from Iwanski's death while he was incarcerated at Northeastern Oklahoma Correctional Center (NOCC). Plaintiff alleges Defendants violated Iwanski's Eighth Amendment right to be free from cruel and unusual punishment by (1) failing to protect him from a deadly assault and (2) failing to provide proper medical care following the assault. The district court concluded Defendants' alleged actions did not violate the Eighth Amendment. Accordingly, the district court granted Defendants' motion for summary judgment. Plaintiff appeals. We exercise jurisdiction under to 28 U.S.C. § 1291.

We review de novo the district court's grant of summary judgment, applying the same standard as the district court under Fed. R. Civ. P. 56(c). See

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Thomas M. Reavley, United States Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.), cert. denied, 120 S. Ct. 53 (1999). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When reviewing a grant of summary judgment, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. Simms, 165 F.3d at 1326. Because Plaintiff has shown genuine issues of material fact as to some of her Eighth Amendment claims, we reverse in part, affirm in part, and remand for further proceedings.

I.

At the time of Iwanski's death, Iwanski and Kevin White were incarcerated at NOCC, a minimum security facility operated by the Oklahoma Department of Corrections (DOC). NOCC began operating in December, 1994, with many areas still under construction. As part of the construction and expansion, NOCC took over one floor of Adams Hall from Eastern State Hospital, which was adjacent to NOCC. Because the rooms at Adams Hall were larger than those previously used at NOCC, prison officials placed single beds into the rooms unstacked. The two-foot long metal pipes previously used to stack the beds were placed into the closet of each of the inmates' rooms.

On February 4, 1995, White took a steel bed leg from Adams Hall and boarded a bus to Building 14, the building in which Iwanski was housed. White had previously been housed in Building 14, but had recently been transferred to Adams Hall. The driver, correctional officer Burke, questioned whether White was still housed in Building 14, and directed him to remain on the bus when they arrived at the building. Contrary to Burke's orders, White exited with the other inmates and Burke lost sight of him. Thereafter, White went to Iwanski's dorm, where Iwanski was sleeping, and struck him on the head several times with the steel bed leg. When the guards were notified that Iwanski was injured, they called an ambulance, which transported Iwanski to the hospital. Although Defendant Burke and inmate Ricky Price performed CPR on the way to the hospital, Iwanski died soon after his arrival.

In her complaint, Iwanski's mother, as administrator of his estate, alleged that numerous Defendants were deliberately indifferent to Iwanski's safety, and later, to his medical needs. Plaintiff brought claims against the director of the DOC, the warden, deputy warden, chief of security, and unit manager for NOCC, and correctional officer Burke, in their official and individual capacities. Plaintiff alleged that Defendants ignored a substantial risk of harm to Iwanski by allowing White access to the steel pipe, by not having appropriate procedures in place to protect Iwanski, and by improperly performing the procedures that were

required.  She alleged also that Defendants were deliberately indifferent to Iwanski's medical needs after the attack, resulting in his death.  Finally, Plaintiff alleged that the DOC director and the NOCC warden were liable for their failure to enact appropriate policies and to supervise the other Defendants.

Defendants moved for summary judgment.  Plaintiff's response to the summary judgment motion did not begin with a concise statement of disputed material facts, with each fact numbered and supported by a specific record cite, as required by the district court's local rules.  See N.D. Okla. L.R. 56.1(B).  Plaintiff did, however, refer to specific record evidence in the body of her argument.  Although the district court noted Plaintiff's lack of compliance with the local rule, the court considered the evidence raised in Plaintiff's argument to determine Defendants' summary judgment motion on the merits.  See Appellant's App. at 113-14. [1]

The court granted summary judgment in favor of Defendants on the following grounds:  (1) the Eleventh Amendment barred Plaintiff's official capacity claims against Defendants; (2) Qualified immunity protected Defendants on the personal capacity claims because their conduct was objectively reasonable; (3) Defendants' alleged actions with respect to both the assault and the adequacy

[1] Plaintiff's counsel is admonished to comply with all applicable court rules at all times, or proceed at her peril.

-5-

of medical care did not violate the Eighth Amendment; and (4) Defendants Fields and Middleton were not liable on the supervisory liability claims because the NOCC was operating under adequate DOC policies when it opened. On appeal, Plaintiff does not challenge the grant of summary judgment on her official capacity claims, but argues that the district court erred in granting summary in favor of Defendants on her individual capacity claims.

## II.

The Eighth Amendment imposes a duty upon prison officials to protect prisoners in custody from violence at the hands of other prisoners. See Farmer v. Brennan, 511 U.S. 825, 833 (1994). To prevail on a claim of failure to protect under the Eighth Amendment, an inmate must show he was "incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials subjectively knew of and disregarded that safety risk. Id. at 834, 837; accord Grimsley v. MacKay, 93 F.3d 676, 681 (10th Cir. 1996). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (internal citation omitted).

Viewing the evidence in the light most favorable to Plaintiff, the evidence showed that inmate White was predisposed to violence. At the time he assaulted Iwanski, White was serving a sentence for several offenses, including assault and battery with a dangerous weapon after former conviction of a felony. Aplt. App. Add. at 86. He had already served a sentence for assault and battery upon a police officer. Id. While in prison, White had been assessed at least one misconduct point, which expired sixteen days before he assaulted Iwanski. Id. On the day of the assault, White had been involved in three separate fistfights with other inmates. Id. at 88-89. Nonetheless, several days before the assault, four steel pipes used for stacking bunk beds were stored in White's room. Id. at 87.

Plaintiff also presented evidence that prison officials recognized the danger of permitting inmates access to materials such as those found at a construction site, and that certain steps were taken to restrict such access. Aplt. App. at 83, 93; Aplt. App. Add. at 77. The policy prohibiting inmates from possessing weapons demonstrates that prison officials recognized the danger of allowing prisoners access to weapons, even those incarcerated at a minimum security facility.

The evidence also showed that supervision of inmates at NOCC was extremely lax. The Inspector General's report of the incident indicated that White ran weekly Friday night poker games while he was incarcerated in Building 14, and that Iwanski was known to participate in these games. Aplt. App. Add. at 91. Inmate Price's affidavit states that "open gambling games took place in the day room daily." Id. at 202.

According to witnesses, inmate White began drinking vodka on the day he moved into Adams Hall, January 30, 1995, and remained drunk for the entire week. Aplt. App. Add. at 87. On the day before the assault, he participated in a poker game in the unit day room, where he lost a significant amount of money because "he was too drunk to play." Id. at 88. White returned to his room at three in the morning and started a fight with one of his roommates. On the day of the assault, at approximately 1:00 p.m., White was involved in another fight with a different inmate. The fight left White bleeding from the mouth and nose, and with obvious bruises on his face. At approximately 2:00 p.m., White was so drunk that "'you could smell the alcohol on him 20' away.'" Id. At approximately 4:00 p.m., White started another fight with his roommate.

During the time that White was playing poker, was fighting with other inmates, and was visibly intoxicated, a NOCC policy required that inmates be counted on their bunks or at their assigned work area at 12:15 a.m., 1:00 a.m.,

2:00 a.m., 3:00 a.m., 4:30 a.m., 7:30 a.m., 12:30 p.m., 4:30 p.m., 7:30 p.m., and 10:05 p.m.  Id. at 93-94, 96-97.  The fact that White engaged in such activities without detection supports the inference that prison staff did not follow the required inmate count procedures.  These requirements took effect on December 13, 1994, more than six weeks before White assaulted Iwanski.  The record also contains evidence that no requirements existed as to how many walk-throughs or random shakedowns should be performed per day or per shift.      Aplt. App. at 51, 83, 88, 94.

Plaintiff presented additional evidence that supervision at NOCC was inadequate through the affidavit of inmate Price and deposition testimony of Defendant Galipeau.  In his affidavit, Price stated that from NOCC's opening in December until the time of the assault, alcohol and drugs were readily available, there were too few NOCC staff to keep control of the inmates, and the guards rarely came out of their offices.     Id.  Galipeau confirmed this, by testifying that when he began working at NOCC, there was a problem with the correctional officers not leaving their offices.     Id. at 98.  The fact that the assault on Iwanski occurred twenty-three days after Galipeau began working at NOCC supports the inference that his testimony covered the time period in question.  Finally, Plaintiff presented evidence that although White had to have passed in front of the unit

-9-

officers' office, the officers on duty never saw White enter or leave Iwanski's dormitory.   Aplt. App. Add. at 90.

Several courts, including our own, have noted that the Eighth Amendment may be violated when prison officials permit inmate access to objects which could be used as weapons, especially when this conduct is accompanied by a lack of adequate supervision over the inmates.      See, e.g. , Berry v. City of Muskogee   , 900 F.2d 1489, 1497-99 (10th Cir. 1990) (holding jury could find deliberate indifference to inmate safety based on evidence that (1) inmates, including crime partners, had 24-hour access to each other; (2) access to wire brooms was not controlled, thereby providing a readily accessible and dangerous weapon; (3) supervision was grossly inadequate; and (4) a jailer had been informed that the inmate feared for his life);    Goka v. Bobbitt  , 862 F.2d 646, 651-52 (7th Cir. 1988) (reversing summary judgment where inmate submitted evidence that prison officials knew of systematic lapse in enforcing tool control policy but failed to take action, thereby creating a climate where violence was likely);       Shrader v. White , 761 F.2d 975, 982-83 (4th Cir. 1985) (noting possible Eighth Amendment violation based on allegations that scrap metal was not sufficiently safeguarded and methods employed to restrict manufacture of weapons were inadequate, if prison officials ignored problem after becoming aware of it);      Tillery v. Owens  , 719 F. Supp. 1256, 1276-77 (W.D. Penn. 1989) (holding failure to control access

to dangerous weapons, which were pervasive throughout prison, combined with lack of adequate staffing, demonstrated deliberate indifference to inmate safety), aff'd, 907 F.2d 418 (3d Cir. 1990); see also Smith v. Arkansas Dep't of Correction , 103 F.3d 637, 641, 648-50 (8th Cir. 1996) (affirming denial of summary judgment on qualified immunity grounds in case where allegations included inadequate supervision and failure to control access to hobby knives, the dangerousness of which officials were aware, but reversing summary judgment in favor of plaintiff); Swofford v. Mandrell , 969 F.2d 547, 549-50 (7th Cir. 1992) (holding allegations of placement of pretrial detainee charged with sexual assault in cell with ten others, failure to inspect cell for more than eight hours despite prisoner's screams, and availability of broom, all in violation of jail regulations, stated claim of deliberate indifference to prisoner's safety).

Although the issue is close, we conclude Plaintiff's evidence raises a genuine issue of material fact as to whether certain prison officials were deliberately indifferent to the risk created by providing White access to a steel bed leg which he used as a weapon. The fact that Iwanski did not ask for protection or that the officials were not aware of a specific risk to Iwanski is not dispositive. Plaintiff need not show that Iwanski was especially likely to be assaulted. Farmer , 511 U.S. at 843 ("[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a

-11-

prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."). Instead, Plaintiff needed to show only that the officials deliberately ignored a substantial risk to the safety of all inmates. Id. at 843-44.

Having concluded that Plaintiff raises genuine issues of material fact regarding the risk to which Iwanski was subjected, we must determine whether summary judgment was nonetheless appropriate for any Defendants. To be held liable for a § 1983 violation, a prison official must have been personally and directly responsible for the alleged Eighth Amendment violation. See Grimsley, 93 F.3d at 679. A supervisor may not be held liable unless an affirmative link exists between the constitutional violation and either the supervisor's personal participation or his failure to supervise. See id.

Applying this standard, DOC Director Fields is entitled to summary judgment. Defendant Fields did not directly participate in the alleged constitutional violation. The only indirect participation alleged is his failure to ensure that NOCC adopted its own operating manual before opening, and his failure to adopt DOC policies prohibiting possession of cash and defining a "weapon" to include a steel pipe. Given the undisputed evidence that NOCC was operating under the general DOC policies when it opened, Plaintiff has not shown

-12-

that the facility was operating without rules or that these rules were constitutionally inadequate.

The evidence is also insufficient to link Warden Middleton to the alleged constitutional violation. Plaintiff has not shown that Middleton had any reason to know the steel pipes were stored in inmate White's room or that his duties included direct supervision of staff on a day-to-day basis. Plaintiff has alleged that Middleton failed to adopt an operating manual before NOCC opened; that the policies he did enact were deficient because they did not prohibit gambling, alcohol, drugs, or weapons; that he did not ensure the correctional officers were trained by requiring testing; and that he did not provide restrictive housing for an endangered inmate or inform inmates what procedures to use if they felt threatened. These allegations do not demonstrate that Middleton was deliberately indifferent to Iwanski's safety, however, because NOCC was operating under the general DOC policies when it opened and such policies prohibit gambling, alcohol, drugs, and weapons; the record does not show that NOCC staff was unfamiliar with the required procedures; restricted housing was unnecessary because NOCC had a policy of transferring an inmate if informed of a threat; and even if one of the inmates was not informed of the procedure to be used if he felt threatened, Plaintiff has made no showing that Iwanski was not so informed.

Even assuming Iwanski was not instructed on the procedure to be used, nothing indicates he would have acted differently had he been so instructed.

Finally, the evidence is insufficient to link correctional officer Burke to the alleged constitutional violation. Plaintiff has not shown that Burke played any role in storing the steel pipes in White's room or that he had any reason to suspect that White intended to harm Iwanski. Although Burke may have been careless in losing sight of White when he disembarked the bus, this does not rise to the level of deliberate indifference to Iwanski's safety. Thus, the district court properly granted summary judgment in Defendant Burke's favor.

Summary judgment should not have been granted, however, in favor of the remaining three defendants: Deputy Warden Ray, Chief of Security Galipeau, and Unit Manager Alexander. Each of these defendants either participated in or acquiesced in placing the pipes in inmate White's room, and each was responsible for ensuring that the inmates were properly supervised.

Deputy Warden Ray was responsible for the day-to-day operation of the NOCC facility, including security. Aplt. App. Add. at 41, 54. His responsibilities included inspecting the new unit (Adams Hall) before inmates were moved in. Id. at 56. He indicated he was aware of the need to restrict inmate access to items such as construction materials. Aplt App. at 83. His management of the facility extended to walking through the dormitories, and to

-14-

ensuring the inmate count and random shakedown policies were carried out on a daily basis. Id. at 83, 84.

Defendant Galipeau was responsible for the security of the facility, including supervising the correctional officers. Aplt. App. Add. at 41-42, 72-73. He inspected the NOCC facility, including the housing units, on a daily basis. Aplt. App. at 96. He was also aware of a problem with the correctional officers staying in their offices. Id. at 98.

Defendant Alexander was responsible for the overall operation of Building 14, where the assault occurred. Aplt. App. Add. at 42, 63. The record also contains evidence that he was the officer responsible for preparing Adams Hall for inmates, and that he took no steps to ensure that the steel pipes generated from unstacking the bunk beds were secured. Id. at 64-67.

A jury could infer from the evidence that these three Defendants were aware of the steel pipes stored in inmates' rooms in Adams Hall but did not take steps to secure them, and that they were responsible for ensuring the inmates were adequately supervised. Thus, a factual dispute remains whether these Defendants were deliberately indifferent to the risk posed to the inmates. [2]

---

[2] Based on the record before us, we cannot say that storing steel pipes in an inmate's room and inadequately supervising the inmate is "objectively reasonable," qualified immunity should not have been granted to these three defendants. See Hollingsworth v. Hill, 110 F.3d 733, 740 (10th Cir. 1997)

(continued...)

III.

Plaintiff also alleged that after the attack Defendants were deliberately indifferent to Iwanski's medical needs. In support of this claim, Plaintiff submitted an affidavit by inmate Price stating that after the attack on Iwanski, (1) the guards and/or other prison officials at the scene offered no assistance; (2) they did not transport him to the hospital for forty-five minutes; (3) prison officials on duty lacked sufficient emergency and medical training; (4) at the time of the attack no medical personnel were on duty at NOCC; and (5) had the prison staff provided timely and adequate medical attention, Iwanski's life would have been saved. Aplt. App. Add. at 202-03. We agree with the district court that this affidavit does not raise a genuine issue whether Defendants were deliberately indifferent to Iwanski's medical needs.

Inmate Price's statements, regarding the lack of assistance offered by prison staff at the scene of Iwanski's attack and their delay in obtaining an ambulance, do not identify any of the named Defendants as being on the scene, and do not contradict the affidavit by Defendant Burke that he called for an ambulance as soon as he personally learned of the attack. Further, inmate Price lacks personal knowledge regarding the amount of training possessed by the

---

[2](...continued)
(holding once plaintiff shows that conduct, if proven, would violate clearly established right, defendant must show conduct was objectively reasonable).

-16-

prison officials on duty. Finally, even though inmate Price was previously a military medic, the record does not show that he had the medical expertise to opine whether Iwanski would have survived had different procedures been followed. The affidavit, therefore, does not raise a triable issue, and the district court properly granted summary judgment.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings.

Entered for the Court


Bobby R. Baldock
Circuit Judge