**Garrett J. DINGES and Christine Foster, Plaintiffs–Appellants,**

v.

**SACRED HEART ST. MARY'S HOSPITALS, INC., Defendant–Appellee.**

No. 98–1639.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 15, 1998.

Decided Jan. 7, 1999.

Stephen A. Ditullio (argued), Dewitt, Ross & Stephens, Madison, WI, for plaintiff-appellant.

Daniel Dennehy (argued) VonBriesen, Purtell & Roper, for defendant-appellee.

Before HARLINGTON WOOD, Jr., CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Working more than 40 hours per week draws premium pay under the Fair Labor Standards Act, 29 U.S.C. § 207. Should hours spent "on call" be treated as

work? According to the Supreme Court, the answer depends on whether one has been "engaged to wait" or is "waiting to be engaged." Compare *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), with *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). That evocative distinction rarely decides a concrete case; on-call time readily can be characterized either way. For most purposes it is best to ask what the employee can do during on-call periods. Can the time be devoted to the ordinary activities of private life? If so, it is not "work." Even a functional approach produces close calls, however; this is one.

Sacred Heart St. Mary's Hospitals operates a hospital in rural Tomahawk, Wisconsin. The Hospital's ambulance department has two "emergency medical technicians" (EMTs) in-house during the day (and recently for an evening shift), but after hours the Hospital relies on standby crews. Two EMTs serve as the "first-out" crew and two more as the "second-out" crew, which will be called to duty if the first-out crew is in the field when the Hospital must dispatch an ambulance. An EMT on first-out status must arrive at the Hospital within 7 minutes of receiving a page. Members of the first-out crew receive $2.25 per hour of on-call time, plus pay at time-and-a-half for all hours devoted to handling a medical emergency. The Hospital credits them with at least two hours' work (and thus they receive three hours' wages) for each emergency call, even if they are back home in less—as they usually are. When calls take more than two hours, they are paid for actual time. Members of the second-out crew have 15 rather than 7 minutes to reach the Hospital. The schedule of a first-out EMT over a two-week period includes 7 days of duty at the Hospital (on 8 or 10 hour shifts) plus 7 evenings and nights of on-call time. It also has three 48-hour periods when the EMT is neither working nor on call. When the Hospital had only one shift per day of EMTs on the premises, and the on-call period correspondingly lasted 14 to 16 hours, a first-out EMT could expect to receive an average of 0.65 calls per period. Because medical emergencies sometimes occur in bunches, the probability of receiving at least one call to work during a given 14 to 16 hour period is lower, approximately one in two.

■ Garrett Dinges and Christine Foster asked for and were assigned first-out status. Now, in this suit, they contend that the rewards should have been even greater than those the Hospital promised and delivered—that the entire 14 to 16 hour on-call period should be treated as working time, so it would produce 21 to 24 hours' wages even if they did not receive any emergency call. Both Dinges and Foster live within 7 minutes' drive from the Hospital—indeed, the entire City of Tomahawk is within the 7-minute radius—so they can and do pass the on-call time at home or at other activities in or near the City. Plaintiffs observe that during on-call time their options are restricted:

- They can't travel outside Tomahawk. Each has spent holidays at home rather than with relatives, and has been unable to attend weddings, family reunions, parties, and other events. While on call, Dinges cannot assist in operation of the family business, located 20 miles from the Hospital. Hunting, fishing, boating, camping, and other recreational activities are restricted to what is possible near the Hospital (and near a car, so that the Hospital can be reached quickly).

- They cannot engage in activities such as using a power lawn mower or snowmobiling whose loud noise would prevent them from hearing a page; correspondingly they cannot attend concerts, where pagers must be turned off, or go swimming.

- They are forbidden to drink alcohol.

- Foster has a babysitter on hand during on-call hours, because she may be called away from her children at any time. She cannot go bike riding with the children or attend school events with them, because responding to a call would take too long.

- Shopping is curtailed because retail outlets in Tomahawk are open shorter hours, and carry fewer goods, than stores in larger population centers outside the 7-minute radius from the Hospital.

The Hospital responds by emphasizing what EMTs *can* do during on-call hours—cook, eat, sleep, read, exercise, watch TV and movies, do housework, care for pets, family, and loved ones at home. Many things in the vicinity of home also are compatible with first-out status. For example, Foster watches her children participate in sports, attends dance recitals, and goes to restaurants and parties. Moreover, the Hospital adds, most of the things that can't be done on first-call status, such as camping and attending events out of town, also are foreclosed by the 15–minute response time of the second-call team, or for that matter by a one-hour response time. But attending special events such as out-of-town weddings could be arranged, even if the weddings were scheduled during on-call time, if an EMT swapped duty periods with another member of the staff. The Hospital has a flexible swap policy. Because swaps require finding another EMT willing to trade, they are hard to arrange for holidays (few EMTs are anxious to work on Thanksgiving or Christmas and give up their own family get-togethers) but easier to arrange for occasional events such as parties and weddings. The district judge concluded that the extensive list of things EMTs can do during first-out time is the legally important one—because time is not "work" if it can be used effectively for personal pursuits—and granted summary judgment to the Hospital.

■ The district court's emphasis on the fact that the EMTs can stay at home while on call, and can do many things while there, has the support of the Department of Labor's implementing regulations.

> An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(d). See *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (courts should defer to the Secretary's definitions of terms). The regulatory question is whether the employee can "use the time effectively for personal pursuits"—not for *all* personal pursuits, but for many. But then there is that weasel word "effectively." An employee who can remain at home while on call, but is called away every few hours, can't use the time "effectively" for sleeping, and probably not for many other activities. Plaintiffs, however, experience less than a 50% chance that there will be *any* call in a 14– to 16–hour period, so their time may be used effectively for sleeping, eating, and many other activities at home and around Tomahawk. (Over 338 on-call periods, Dinges had 184 pass without a call. Thus Dinges responded to at least one call only 46% of the time. Foster's experience was similar.)

Plaintiffs make a great deal of the 7–minute response limit, which they say is below the shortest period that any appellate court has deemed compatible with "effective" use of time for personal pursuits. Maybe so; the cases are not easy to classify. See *Bright v. Houston Northwest Medical Center Survivor*, 934 F.2d 671 (5th Cir.1991) (en banc); *Brock v. El Paso Natural Gas Co.*, 826 F.2d 369 (5th Cir.1987); *Martin v. Ohio Turnpike Commission*, 968 F.2d 606 (6th Cir.1992); *Cross v. Arkansas Forestry Commission*, 938 F.2d 912 (8th Cir.1991); *Berry v. Sonoma County*, 30 F.3d 1174 (9th Cir. 1994); *Andrews v. Skiatook*, 123 F.3d 1327 (10th Cir.1997); *Renfro v. Emporia*, 948 F.2d 1529 (10th Cir.1991); *Birdwell v. Gadsden*, 970 F.2d 802 (11th Cir.1992). But we do not think that response time is dispositive. It sets a limit on the distance an EMT may live from the Hospital, but a person who lives nearby may have ample time to respond. A person who lived well outside Tomahawk would find a 20–minute response time as constraining as plaintiffs find a 7–minute time, while someone who lived next door to the hospital would think 7 minutes generous.

Both plaintiffs live where they did before they asked for first-out status and do not say that they would have moved farther away if the time were longer; the response time has not affected residential choices. Tomahawk is rural and traffic jams are rare. A 7-minute response limit in Milwaukee would not be compatible with effective use of time for personal pursuits; things are otherwise in the countryside. Plaintiffs do not contend that the 7-minute time interferes with sleeping or the care of children. It is long enough to wake up (or finish changing a diaper) and still get to the Hospital on time. Seven minutes may be the lower limit, for it takes time to shake off the cobwebs when awakening and to jump into clothes, but we need not explore the question further.

■ To the extent there is uncertainty—and the open-ended regulatory standard, combined with the Supreme Court's oracular "test," ensures uncertainty—we must take account of the arrangement plaintiffs themselves chose. They sought first-out status because it created the best earnings opportunity, and they agreed to a combination of hourly pay for on-call hours plus time-and-a-half for actual emergency calls. The prospect of being paid for spending time at home (even time asleep) must have been attractive. Although the FLSA overrides contracts, in close cases it makes sense to let private arrangements endure—for the less flexible statutory approach has the potential to make everyone worse off. Suppose we were to hold that time the EMTs spend on call counts as "work." That would produce a windfall for Dinges and Foster today, but it would lead the Hospital to modify its practices tomorrow. If the EMTs are "working" 24 hours a day, then the Hospital will abolish the on-call system and have EMTs on its premises 24 hours a day, likely hiring additional EMTs so that it can limit the premium pay for overtime. This is what St. Mary's already has done at its hospital in Rhinelander, Wisconsin. The Hospital will pay more in the process, but EMTs such as Dinges and Foster will receive less, spend more time at the Hospital (and less at home), or both. Ambulatory statutory and regulatory language permits labor and management to structure their relations so that each side gains. That is what the Hospital has done in Tomahawk, and we do not think that the FLSA compels a different arrangement.

AFFIRMED