**Dustyn DICKHAUT and Jason Stanford, Plaintiffs,**

v.

**MADISON COUNTY, IOWA, Defendant.**

No. 4:08–cv–00182–JEG.

United States District Court, S.D. Iowa, Central Division.

Oct. 23, 2009.

884

Michael J. Carroll, Kodi Ann Brotherson, Babich Goldman Cashatt & Renzo PC, Des Moines, IA, for Plaintiffs.

Patrick D. Smith, Bradshaw Fowler Proctor & Fairgrave, Des Moines, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on a Motion for Partial Summary Judgment by Defendant Madison County, Iowa (Madison County), which Plaintiffs Dustyn Dickhaut (Dickhaut) and Jason Stanford (Stanford) (collectively, Plaintiffs) resist. The Court held a hearing on the motion on August 21, 2009. Dickhaut and Stanford were represented by attorney Michael J.

Carroll. Madison County was represented by attorney Patrick D. Smith. The matter is fully submitted and ready for disposition.

## I. BACKGROUND

The following facts are either not in dispute[1] or are viewed in the light most favorable to Dickhaut and Stanford. *See Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir.2009) (noting that "a district court must rule on a motion for summary judgment after viewing the facts in the light most favorable to the non-moving party").

Dickhaut and Stanford both worked for Madison County as part-time emergency medical technicians (EMTs). Dickhaut worked part time from October 2005 until he quit in September 2007. Stanford worked part time from September 2003 to August 2006, when he became a full-time employee of Madison County. In July 2007, Stanford resigned from his full-time position and returned to part-time work for Madison County. Part-time EMTs in Madison County worked twelve-hour shifts: from 5:00 a.m. to 5:00 p.m. or from 5:00 p.m. to 5:00 a.m. Part-time EMTs were also able to work "gap shifts" created when full-time EMTs were not working because of vacation, illness or absence; and part-time EMTs were allowed to choose their own shifts. Dickhaut explained that "[w]hen the schedule was posted, [he] was allowed to come in, look at what days were open and what shifts were available, and sign up for shifts that [he] wanted." Def. App. 8.

The Madison County EMTs operate out of a station in Winterset, Iowa. The station remains open from 8:00 a.m. to 4:30 p.m., Monday through Friday. Although full-time EMTs were required to remain at the station between emergency calls during business hours, part-time EMTs were not so required. During the 5:00 p.m. to 5:00 a.m. shift, and over the weekends, neither full-time nor part-time employees were required to remain at the station.

While Dickhaut and Stanford were employed by Madison County, full-time EMTs and part-time EMTs were compensated differently. Full-time EMTs were subject to a collective bargaining agreement, under which they were paid a salary for all hours worked, whether those hours were spent responding to an emergency or waiting on-call. Part-time EMTs were not subject to a collective bargaining agreement, and their rate of pay was determined by whether their time was classified as "part-time on-call" or "part-time working." When part-time EMTs were waiting for a call, their time was classified as part-time on-call, and they were paid $4.25 per hour. When part-time EMTs responded to emergency calls, maintained the trucks, wrote required reports, or completed non-emergency transports, their time was designated as part-time working, and they were paid $7.25 per hour.

When part-time EMTs were on a twelve hour on-call shift, they were required to carry a pager and to refrain from alcohol use. Part-time EMTs were not required to monitor a radio, although Dickhaut did

---

1. The extent of any factual dispute is initially unclear. Plaintiffs end the Introduction section of their brief stating, "Madison County's motion for summary judgment should be overruled because there are material factual disputes which preclude judgment as a matter of law on Madison County's claim Plaintiff did not work in excess of [forty] hours per week." Pl. Br. 1. In the next sentence of the brief, Plaintiffs assert, "[b]ecause the salient facts are not in dispute, the issue is [sic] legal conclusion to reach from those facts." *Id.* Additionally, Plaintiffs did not dispute any portion of Madison County's Statement of Undisputed Facts but instead added information to paragraphs 13, 14, 16, 20, 23, and 27. Accordingly, the Court concludes little of the core factual background is in dispute.

so at times despite the fact that "[t]he pager was what activated us." Def. App. 13. After receiving an emergency page, a part-time EMT was required to arrive at the station, in uniform, within five minutes. The required uniform consisted of navy pants, closed toed shoes, and a shirt or sweater provided by Madison County. Part-time EMTs were also never required to wait at the station, but some did so voluntarily during day shifts in order to ensure a faster response time.

While on-call, part-time EMTs were permitted to stay at home, sleep, eat, watch television, complete chores, attend movies, dine at restaurants, and go to social gatherings, so long as they were never more than five minutes away from the station. Dickhaut stated that "during the weekend or during some week nights I wasn't able to socialize, I guess you'd say, with family, going out to eat, going into Des Moines, going to certain, you know, events that I normally would." Def. App. 15–16. If an on-call EMT went out to eat or to a movie, he would have to leave if he was notified of an emergency by his pager. Additionally, part-time EMTs were allowed to have other jobs, but they were not allowed to work at another job while on-call for Madison County.

During some shifts, Dickhaut and Stanford were not required to respond to an emergency call or transport request. Overall, Dickhaut had to respond to a call during 21 of his 47 part-time on-call shifts, or 45 percent of the time; Stanford had to respond to a call during 222 of his 360 shifts, or 61 percent of the time. Time needed to complete an emergency call ranged from one-half hour to thirteen hours. In a majority of Dickhaut and Stanford's twelve hour shifts, they did not log more than two hours as "part-time working."

Dickhaut and Stanford filed the present lawsuit, contending the on-call time constitutes working time under the Fair Labor Standards Act (FLSA or the Act), 29 U.S.C. § 201 et seq., and therefore they are entitled to unpaid overtime compensation. Plaintiffs assert that they are entitled to damages and statutory fees and costs. Madison County filed this Motion for Partial Summary Judgment on May 18, 2009, arguing that the time Dickhaut and Stanford spent on call as part-time EMTs for Madison County is not working time under the FLSA, and therefore Plaintiffs are not entitled to overtime compensation.

## II. DISCUSSION

### A. Summary Judgment Standard

■ Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Corn Plus Co-op. v. Cont'l Cas. Co., 516 F.3d 674, 678 (8th Cir.2008). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Where the material facts are not in dispute, an order granting summary judgment is appropriate if the movant is entitled to judgment as a matter of law. See Hutson v. Wells Dairy, Inc., 578 F.3d 823, 825 (8th Cir.2009). Dickhaut and Stanford do not dispute the material facts outlined by Madison County as to the essential circumstances of this case. Therefore, the Court focuses on the legal issue of whether the part-time EMTs' on-call hours constitute working hours under the FLSA. See Reich v. Stewart, 121 F.3d 400, 404 (8th Cir.1997) ("The ultimate question of whether an employee falls

within the FLSA's protection is a question of law."); *Ingram v. County of Bucks*, 144 F.3d 265, 267 (3d Cir.1998) ("[O]nce there is no genuine issue of material fact as to how a plaintiff spends his on-call time, the determination of whether a plaintiff's activities exclude him 'from the overtime benefits of the FLSA is a question of law,' which can properly be resolved on summary judgment.").

### B. FLSA

The FLSA provides that an employer must pay an employee at a rate of one and one-half times the employee's normal rate of pay for all time the employee works beyond forty hours in a workweek. 29 U.S.C. § 207(a)(1). "Because the FLSA applies only when the employee is 'working' for the employer, this issue determines whether the appellants' on-call hours were covered by the FLSA." *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir.2001). Although the FLSA does not define what constitutes working, the Supreme Court provided guidance in *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), and *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). The Court established that in determining whether an employee was working during on-call time, a court should ask whether "time is spent predominately for the employer's benefit or for the employee's." *Armour*, 323 U.S. at 133, 65 S.Ct. 165. In *Skidmore*, the Court noted that it could not "lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time." *Skidmore*, 323 U.S. at 136, 65 S.Ct. 161. The Court went on to explain that "[f]acts may show that the employee was engaged to wait, or they may show that he waited to be engaged. His compensation may cover both waiting and task, or only performance of the task itself." *Id.* at 137. "Time spent away from an employer's premises may constitute compensable hours of work if conditions imposed by an employer restrict the employee from using the time for personal pursuits." *Cross v. Ark. Forestry Comm'n*, 938 F.2d 912, 916 (8th Cir.1991).

■ In addition to guidance provided by the courts, the Department of Labor, which is charged with administering the FLSA, provided the following regulations to further delineate the boundaries of the Act:

(c) Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work. For example, where a police station must be evacuated because of an electrical failure and the employees are expected to remain in the vicinity and return to work after the emergency has passed, the entire time spent away from the premises is compensable. The employees in this example cannot use the time for their personal pursuits.

(d) An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot

use the time effectively for personal pursuits, such time spent on call is compensable. 29 C.F.R. § 553.221(c), (d). Specifically, with regard to on-call time, the Department of Labor has clarified that

An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call". An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 C.F.R. § 785.17. In determining whether or not Dickhaut and Stanford's on-call time constituted working time under the FLSA, this Court must apply a "practical approach based on the realities of each case." *Reimer*, 258 F.3d at 726 (quoting *Armour*, 323 U.S. at 133, 65 S.Ct. 165). In applying a practical approach, the Court will consider (1) the degree to which on-call regulations restricted Dickhaut and Stanford in their ability to engage in personal activities; (2) whether the five-minute reporting requirement prevented Dickhaut and Stanford from effectively using on-call time for personal purposes; (3) the frequency with which Dickhaut and Stanford responded to calls; and (4) the flexibility that Dickhaut and Stanford had in scheduling their on-call shifts. *See Ingram*, 144 F.3d at 267 (explaining that resolution of whether on-call waiting time constitutes working time is fact specific and that while there is not a conflict among the courts of appeals on this issue, courts use different factors to determine the level of interference based upon the specific factual scenario of the case); *Berry v. County of Sonoma*, 30 F.3d 1174, 1183 (9th Cir.1994) (utilizing a non-exhaustive list of seven factors in determining whether on-call time was compensable under the FLSA).

### 1. Freedom to Engage in Personal Activities

Dickhaut and Stanford contend that the time they spent on-call was so severely restricted that all of their on-call time should constitute working time under the FLSA. Madison County argues that the Plaintiffs were still able to engage in a wealth of personal activities, and therefore the time Dickhaut and Stanford spent on call should not be considered working time. Resolution of this dispute requires a comparison of precedent and balancing of circumstances.

In *Reimer v. Champion Healthcare Corp.*, the Eighth Circuit addressed under what circumstances on-call time may constitute working time. In that case, a group of healthcare employees, most of whom were nurses, sued their employer, alleging that the time they spent on call off premises was working time under the FLSA. *Reimer*, 258 F.3d at 724. The court noted that while on call, the nurses "had a great deal of flexibility in their activities," and the "primary requirement was that they had to be reachable by either cellular phone or beeper, or by leaving a number." *Id.* The nurses did not have to wait at the hospital or even at their homes. "They could play sports, work at home, go shopping, or visit friends and neighbors." *Id.* The only real restrictions were that the nurses could not use alcohol while on call and had to be able to report to the hospital within twenty minutes if they were called to duty. *Id.* In holding that the on-call time did not constitute working time because it was not spent predominantly for the benefit of the employer, the court noted that "there were very few restrictions placed on the appellants during their on-call hours." *Id.* at 725.

Courts in other jurisdictions have similarly concluded that an employee's on-call

time was not compensable time under the FLSA even where the employer placed more stringent requirements on the employee's freedom, such as requiring the employee to remain at home or on the employer's premises. For example, in *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 738–39 (6th Cir.2000), employee Rutlin was a funeral director and embalmer who was often on call daily from 5:00 p.m. until 8:00 a.m., and occasionally on call from 5:00 p.m. Friday until 8:00 a.m. Monday. Rutlin "was expected to remain at home while on-call, where he was required to answer the funeral home's calls, which were forwarded to his house." *Id.* at 744. Despite the fact that Rutlin answered fifteen to twenty calls per night and was apparently expected to remain at home, the Sixth Circuit held that the time during which Rutlin was not answering calls did not constitute working time under the FLSA. *Id.* ("[T]he restrictions on Rutlin were not so onerous as to require compensation."); *see also Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189 (5th Cir.1989) (finding that an on-call ambulance dispatcher, who was required to stay home from 5:00 p.m. until 8:00 a.m. five nights a week was not entitled to overtime compensation under the FLSA); *Kelly v. Hines–Rinaldi Funeral Home, Inc.*, 847 F.2d 147, 148 (4th Cir.1988) (holding that a funeral home employee was not entitled to overtime compensation despite the employer's requirement that the employee stay in his residence on premises of the funeral home from 12:00 a.m. to 6:30 a.m.).

Here, as in *Reimer*, there were very few restrictions placed on Dickhaut and Stanford during their on-call hours. Although some courts, such as the Sixth Circuit in *Rutlin*, have held that waiting time is not compensable even when an employee *was* required to stay in his home during the on-call period, here, Plaintiffs did not have this limitation. Dickhaut and Stanford had beepers, giving them the ability to

wait at places other than the station or their homes. Like the nurses in *Reimer*, Dickhaut and Stanford had the ability to move around town and enjoyed the freedom to engage in personal activities such as sleeping, eating, shopping, socializing, watching television, attending movies, and completing chores if they so chose. *See Reimer*, 258 F.3d at 724. As in *Reimer*, the core restrictions upon Dickhaut and Stanford were that they were prohibited from using alcohol while on call and that they were required to arrive at the station, in uniform, within the specified time after receiving a page.

In contrast, on-call time could be compensable under the FLSA where the employer's policies are so stringent such that the employee is not able to use the time effectively for his or her own purposes. *See Cross*, 938 F.2d at 916. In *Cross v. Arkansas Forestry Commission*, employees of the Arkansas Forestry Commission (the Commission) sued, and the district court found "that the employees were not entitled to overtime compensation under the FLSA for time spent on subject-to-call status." *Id.* at 913. After becoming subject to the FLSA, the Commission required all fire protection employees to stay on call twenty-four hours per day, seven days per week unless given permission by a supervisor to take time off. *Id.* at 914. In addition to being required to stay on call at all times, employees were required to continually monitor all radio communications, and the radios only had a range of thirty-five to fifty miles. *Id.* at 916–17. Reversing on appeal, the Eighth Circuit found that the restrictions were too onerous because employees and their families could not travel beyond fifty miles, could not engage in activities that detracted from the ability to hear the radio, were unlikely to spend money on activities because of the constant risk of being called into work, and even basic functions such as

"the employees' ability to entertain in their homes, attend social gatherings, attend church services or engage in other personal pursuits [were] limited." *Id.* at 917.

The restrictions placed on Dickhaut and Stanford fall short of the limitations placed on the plaintiffs in *Cross.* Unlike in *Cross,* Dickhaut and Stanford were not required to remain on call twenty-four hours per day, seven days per week. Instead of a mandatory on-call requirement, Dickhaut and Stanford were allowed to pick the shifts that they wanted to work, thus allowing them to avoid possible conflicts between work and family or social obligations. Further, Dickhaut and Stanford were not required to constantly monitor a radio, as were the plaintiffs in *Cross.* While Dickhaut and Stanford both indicated they had a radio that they sometimes used to monitor communications, both stated they were not required to listen to it.[2] Unlike the plaintiffs in *Cross,* because Dickhaut and Stanford were not on call twenty-four hours per day, seven days per week, their movement was not continually limited to a thirty-five to fifty mile range. Further distinguishable from the plaintiffs in *Cross,* Dickhaut and Stanford's freedom to engage in personal activities of their choice was not limited by having to constantly listen to a radio; and their "ability to entertain in their homes, attend social gatherings, attend church services or engage in other personal pursuits" was not obstructed. *See id.*

The relative lack of restrictions placed upon the use of Plaintiffs' on-call time and their ability to use the time effectively for their own purposes supports a finding that such time was not spent predominantly for the benefit of Madison County. *See Reimer,* 258 F.3d at 725; *see also Bright v.*

*Houston Nw. Med. Ctr. Survivor, Inc.,* 934 F.2d 671, 677 (5th Cir.1991) (noting that finding an employee can use on-call time effectively for his own purposes "does not imply that the employee must have substantially the same flexibility or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject").

**2. Time Allotted to Respond**

Dickhaut and Stanford argue that despite the relatively limited restrictions placed on the use of their on-call time, the five-minute reporting requirement necessitates a finding that their time was severely restricted, and therefore they were working while waiting on call. Madison County notes that the five-minute reporting requirement is consistent with numerous other reporting time scenarios where courts have found on-call time not compensable.

For example, in *Dinges v. Sacred Heart St. Mary's Hospitals, Inc.,* 164 F.3d 1056, 1057 (7th Cir.1999), the court had to determine whether under the FLSA plaintiffs Dinges and Foster, who were EMTs for a rural hospital in Tomahawk, Wisconsin, were "engaged to wait" or "waiting to be engaged" when they were on call. During their fourteen to sixteen hour on-call shifts, plaintiffs were paid $2.25 per hour for waiting time and received an additional wage of time-and-a-half when responding to an emergency. *Id.* Plaintiffs were allowed to stay home while on call but had to respond to the hospital within seven minutes. Due to this time restriction, plaintiffs could not

---

**2.** Stanford testified, "I had a radio. [I][d]idn't have to monitor it. The pager let us know when the calls were going out." Def. App. 37. When Dickhaut was asked whether he was required to monitor his radio, Dickhaut corroborated Stanford's testimony by stating, "No. The pager was what activated us." Def. App. 13.

[T]ravel outside Tomahawk. Each has spent holidays at home rather than with relatives, and has been unable to attend weddings, family reunions, parties, and other events. While on call, Dinges cannot assist in operation of the family business, located 20 miles from the Hospital. Hunting, fishing, boating, camping, and other recreational activities are restricted to what is possible near the Hospital (and near a car, so that the Hospital can be reached quickly).

*Id.* In addition, the court noted that plaintiffs could not engage in noisy activities, drink alcohol, or easily shop due to the limited retail offerings in Tomahawk. *Id.* In finding that the time Dinges and Foster spent on call was not working time under the FLSA, the Seventh Circuit noted that response time is not necessarily dispositive, explaining that "[a] person who lived well outside Tomahawk would find a 20–minute response time as constraining as plaintiffs find a 7–minute time, while someone who lived next door to the hospital would think 7 minutes generous." *Id.* at 1058. The court further noted that Tomahawk is a rural city, and traffic is not a concern. The court reasoned that "[a] 7–minute response limit in Milwaukee would not be compatible with effective use of time for personal pursuits; things are otherwise in the countryside." *Id.* at 1059.

■ The Court finds *Dinges* persuasive and its analysis particularly applicable to the facts present in this case. For the purposes of the current comparison, Winterset, Iowa, and Tomahawk, Wisconsin, are similarly sized towns located in the countryside.[3] Dickhaut and Stanford have placed a great deal of emphasis on the five-minute response time requirement, just as the plaintiffs placed a great deal of emphasis on the seven-minute response time requirement in *Dinges. See id.* at 1058. However, Dickhaut and Stanford both lived less than a five-minute drive from the station in Winterset when they were employed as part-time EMTs. Winterset, like Tomahawk, is not subject to traffic jams, and the town's small size allows individuals to freely move around town and engage in a number of personal activities quickly and efficiently. As the *Dinges* court noted, "[t]he regulatory question is whether the employee can 'use the time effectively for personal pursuits'—not for all personal pursuits, but for many." *Id.* Although a five-minute reporting time is slightly less than the seven-minute reporting time approved in *Dinges,* and Winterset may be somewhat larger in population that Tomahawk, the Court finds the differentials immaterial on the issue of Dickhaut's and Stanford's ability to engage in personal activities. Dickhaut and Stanford themselves noted that while on call, EMTs in Winterset had the ability to eat out at a restaurant, go to a movie, attend children's activities, run personal errands, socialize, spend time at home with family, eat, watch television, and sleep. *Cf. Sletten v. First Care Med. Servs.,* No. 98–2446, 2000 WL 1196199, at *11–12 (D.Minn. Mar. 20, 2000) (holding that a requirement that EMTs stay within five minutes of the am-

**3.** Judicial notice may be employed in consideration of a motion for summary judgment when the necessary predicates are met. *See* 1 Weinstein's Federal Evidence § 201.32[2] (2d ed.2003). Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of the relative populations of Winterset, Iowa, and Tomahawk, Wisconsin, as these facts are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed.R.Evid. 201(b). According to the United States Census Bureau, the population of Winterset, Iowa, was 4,768 in the year 2000; the population of Tomahawk, Wisconsin, was 3,770 in the year 2000. *See* U.S. Census Bureau, http://factfinder.census.gov/(search "Fast Access to Information" for "Winterset, Iowa" and "Tomahawk, Wisconsin").

bulance garage did not disrupt their ability to engage in personal activities to such a degree that their on-call time was spent predominantly for the benefit of the employer). While the five-minute reporting requirement would necessarily preclude Dickhaut and Stanford from participating in out-of-town activities while on call, just as the plaintiffs in *Dinges* were precluded from participating in some activities, Dickhaut and Stanford still had the ability to effectively use their on-call time for many of their own personal pursuits, which supports a finding that their on-call time was not spent predominantly for the benefit of Madison County. *See Andrews v. Town of Skiatook, Okla.*, 123 F.3d 1327, 1332 (10th Cir.1997) (finding a response time of five to ten minutes did not preclude plaintiff EMT from using on-call time for his personal pursuits where plaintiff lived in a small town and had access to the entire town within five to ten minutes); *Burnison v. Mem'l Hosp., Inc.*, 820 F.Supp. 549, 554 (D.Kan.1993) (granting summary judgment to employer, in part, because even though a five-minute response time is somewhat short, the city in which the employee worked was relatively small, and the time needed to get to the hospital would be less than five minutes); *Clay v. City of Winona, Miss.*, 753 F.Supp. 624, 625, 629 (N.D.Miss.1990) (finding a purported five-minute response time immaterial because it was undisputed that, whatever the time limit, plaintiffs were still able to use and enjoy their stand-by time and because a five-minute response time is no more restrictive than requiring an employee to stay at home or within hailing distance of an alarm during an on-call shift); *see also Darrah v. Mo. Highway & Transp. Comm'n*, 885 F.Supp. 1307, 1311 (W.D.Mo.1995) (explaining that "the courts that have dealt with this issue have consistently held that any imposition created by an on-call policy must be *very significant* to justify compensation for time spent on

call but not at work or working," and that while every on-call policy inconveniences employees in some way, in "the vast majority of cases on-call time has been held not compensable").

### 3. Frequency of Calls

In determining whether on-call time was spent predominately for the benefit of an employer, courts have also considered the frequency with which on-call employees are called back to work. *See Reimer*, 258 F.3d at 725; *Bright*, 934 F.2d at 674; *Andrews*, 123 F.3d at 1331. Dickhaut and Stanford argue that they were called back so frequently that their on-call time should be compensable, while Madison County argues that because Dickhaut and Stanford were often never called at all, their on-call time is properly classified as "waiting to be engaged."

In *Reimer*, the court noted that it was "relatively uncommon for the [nurses] to be called in more than once during their on-call schedules" and that the record showed that only about one-quarter of the nurses had been called in more than once per shift during the preceding three years. *Reimer*, 258 F.3d at 725. The court further observed that a finding that on-call employees were not called back frequently "mitigates against a conclusion that the on-call time was spent predominantly for the benefit of [the employer]." *Id.*

*Reimer* stands in sharp contrast to the factual scenario presented in *Renfro v. City of Emporia, Kansas*, 948 F.2d 1529, 1537–38 (10th Cir.1991), wherein the court held that the time plaintiff firefighters spent on call was compensable under the FLSA, in part, because they were called back to work on average three to five times per shift. The court reasoned that because firefighters were called back so frequently, they were not able to use the on-call time for their own benefit, and thus

the time was predominantly for the benefit of the employer. *Id.* at 1538.

■ In this case, the infrequency with which Plaintiffs were called back to work supports a finding that on-call time was not spent predominantly for the benefit of the employer. *See Reimer,* 258 F.3d at 725. The record shows that Stanford did not have to respond to even a single call during 138 of his 360 shifts, or 39 percent of the time. Similarly, Dickhaut did not have to respond to a single call during 26 of his 47 part-time shifts, or 55 percent of the time. Further, in the majority of Dickhaut and Stanford's part-time shifts, they did not spend more than two of the twelve hours actually working. This stands in stark contrast to *Renfro,* wherein the employee plaintiffs were called back to work three to five times per shift. Here, Plaintiffs were often able to go through an entire twelve-hour shift without ever having to respond to a call. This frequently allowed Dickhaut and Stanford to devote their entire on-call time to their own personal pursuits, such as sleeping, eating, socializing with family, or watching television, without interruption. The irregularity with which Dickhaut and Stanford were called in to work further supports a finding that the time spent on call was not predominantly for the benefit of the employer. *See Reimer,* 258 F.3d at 725; *Bright,* 934 F.2d at 674 (finding the on-call employee was not working predominantly for the benefit of his employer where he was called in on average only four to five times per week); *Andrews,* 123 F.3d at 1331 (finding low frequency of call backs supported district court holding that plaintiff's on-call time was not compensable); *Sletten,* 2000 WL 1196199, at *11 (finding that the anticipation of "1.2 calls per shift, or .3 for that matter, may discourage some activities that could impair the availability of the on-call worker," but the "minimal number of calls per shift, on average, would [not] discourage a wealth of activi-ties which could be performed within five minutes of the ambulance garage.").

### 4. Flexibility in Scheduling

■ The ability of an employee to trade shifts with another employee is also a factor to consider in determining whether an employee's on-call time was spent predominantly for the benefit of the employer. *Compare Ingram,* 144 F.3d at 269 (holding that on-call time was non-compensable, in part, because plaintiff employees could easily trade shifts in order to pursue their own personal activities), *and Berry,* 30 F.3d at 1186 (finding that "an ability to easily trade shifts" supports a finding that on-call time was not spent predominantly for the benefit of the employer), *with Renfro,* 948 F.2d at 1535 (finding that on-call time was compensable, in part, because "trading on-call shifts was difficult if not impossible").

■ Here, the record is unclear as to whether or not Dickhaut and Stanford had the ability to easily trade shifts with other part-time EMTs. However, even if Dickhaut and Stanford were limited in their ability to trade shifts, they had even greater flexibility in that they were able to pick which shifts they wanted to work. When asked how part-time EMTs were scheduled in Madison County, Dickhaut noted that it was not done automatically, rather, "[w]hen the schedule was posted, I was allowed to come in, look at what days were open and what shifts were available and sign up for shifts that I wanted." Def. App. 8. Stanford stated that "[as][p]art time we were pretty much self-scheduled. We could go up and sign up for the days that we wanted to work.... Part-timers could go in and work as many hours as they wanted." Def. App. 34. Instead of recruiting another EMT to trade a shift in the event of an unavoidable upcoming personal event, Dickhaut and Stanford them-

selves had the ability to schedule around anticipated conflicts, thus mitigating the need to trade shifts. This flexibility in scheduling further supports a finding that Dickhaut and Stanford's on-call time was not spent predominantly for the benefit of Madison County.

In applying a practical approach based upon the specific record in this case, the Court finds that the time Dickhaut and Stanford spent as on-call EMTs was not working time under the FLSA because it was not spent predominantly for the benefit of Madison County.

## III. CONCLUSION

For the reasons stated above, Defendant's Motion for Partial Summary Judgment (Clerk's No. 12) must be **granted**.

**IT IS SO ORDERED.**